**ASTRA OIL COMPANY, INC.,**
Petitioner–Appellant,

v.

**ROVER NAVIGATION, LTD.,** as Owner of the M/V Emerald, Respondent–Appellee.

**Docket No. 02–9388.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 5, 2003.

Decided: Sept. 22, 2003.

James M. Textor, Cichanowicz Callan Keane Vengrow & Textor, LLP, New York, NY, for petitioner-appellant.

Richard M. Ziccardi, Skoufalos, Llorca & Ziccardi, LLP (Manuel A. Molina, on the brief), New York, NY, for respondent-appellee.

Before: JACOBS and SOTOMAYOR,

Circuit Judges.*

SOTOMAYOR, Circuit Judge.

Respondent-appellant Astra Oil, Inc. ("Astra") appeals from a judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, *District Judge*) denying Astra's motion to compel Rover Navigation, Ltd. ("Rover") to arbitrate Astra's claims for damages relating to the late delivery of a shipment of gasoil. While Astra was not a signatory to the tanker voyage charter party contract (the "charter party") that contains the arbitration clause Astra now seeks to enforce, Astra maintains that, under our precedent, it may compel Rover to arbitrate because Astra is an affiliate of signatory AOT Trading AG ("AOT"), the charterer, and Astra's claims are inextricably intertwined with the charter party, to which Rover is a party.

Although the district court applied the correct legal standard in assessing whether a signatory to a contract containing an arbitration clause can be estopped by a non-signatory to that contract from refusing to participate in arbitration, the court erred in concluding that Astra's claims here are not closely intertwined with the contract containing the arbitration provision. In fact, Astra's claims are that Rover breached its warranties of speed and seaworthiness under the charter party. In light of the close connection between Astra's claims and the charter party, the close corporate and operational relationship between Astra and AOT, and the actions of the parties during the events giving rise to this dispute, we hold that the petition to compel arbitration should have been granted, and Rover is estopped from avoiding arbitration under the terms of the arbitration clause contained in the charter party to which it is a signatory.

## BACKGROUND

The dispute between the parties arises from the delay in shipment of gasoil on Rover's vessel the M/V Emerald. Under the charter party entered into on November 10, 2000 between Rover and AOT, Rover agreed to transport gasoil for AOT from Taiwan to a designated port in the United States. The charter party contains an arbitration clause requiring arbitration of "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" in "the City of New York ... pursuant to the laws relating to arbitration there in force ...." Astra and AOT are affiliated companies engaged in the business of international arbitrage merchant oil trading; both are owned by Astra Oil Trading N.V. of the Netherlands. On November 13, 2000, Astra entered into a sales contract with Sprague Energy Corporation ("Sprague") in which Sprague agreed to purchase a certain quantity of gasoil from Astra. The sales contract included terms specifying the quantity, price, and location of delivery, and contained a clause providing that the gasoil would be delivered between December 25, 2000 and January 5, 2001, for a price of .40 cents per gallon over the standard NYMex Heating Oil contract, or between January 5 and 15, 2001, for a price of only .15 cents per gallon over the standard NYMex contract.

Although the Emerald loaded in Taiwan without incident on November 28, 2001, during the course of its trans-Pacific voyage, it "encountered some problems with a main engine turbocharger." Appellee's Br. at 5. Astra maintains that the Emerald

---

* The Honorable Fred I. Parker, who was a member of the panel, died following argument, and this appeal is being decided by the two remaining members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b).

then " 'limped' to somewhere off Hawaii where the Vessel drifted offshore to perform engine repairs. From December 20th to 31, 2000, the Vessel remained drifting off Hawaii." Appellant's Br. at 12. The vessel eventually made its way to Boston on January 25, 2001, where it planned to unload a portion of its cargo and then discharge the remaining cargo for delivery to Sprague in Portland, Maine. While in the waters off Boston, however, the U.S. Coast Guard issued a detention order after an inspector discovered a crack in the vessel's main deck plate over a loaded cargo tank. The Emerald remained docked in Boston through February 6, 2001, pursuant to this detention order.

After the main deck crack was discovered, Rover issued a General Average Declaration to Astra and AOT, and exercised a lien on the cargo on February 1, 2001. Astra, in turn, issued to Rover a claim notice for commercial cargo late delivery damages and threatened a maritime arrest of the vessel to secure that claim. Consistent with maritime practice, the parties attorneys' exchanged security for the respective claims: Rover posted a Club Letter of Understanding ("LOU") dated February 7, 2000, and Astra posted a Lloyd's Average Bond dated February 6, 2000. Both the cargo and the vessel were then released.

In negotiating the LOU, counsel for Astra and AOT wrote to Rover's counsel, stating:

[W]e request a draft of the proposed LOU at your earliest opportunity. The LOU should include the appropriate language identifying the claimants, the cargo, the nature of the dispute, the threat of arrest and jurisdiction is the United States District [Court] for the District of Maine at Portland, the dispute will be heard in New York arbitration, and the LOU is in an amount certain "plus interest, reasonable attorney's fees and costs".

This LOU encompassed the claims of both AOT, as voyage charterer, and Astra, as seller/consignee. The Club LOU issued February 7, 2000 to AOT and Astra, states in relevant part:

In consideration of your agreeing not to seize, arrest, attach or otherwise detain the M/T Emerald ... the undersigned Association hereby agrees:

1. To file, or cause to be filed, a claim by or on behalf of the owner of said vessel in any suit which you intend to bring in the United States District Court for the District of Maine .... In the event it is determined that another Court or Tribunal has competent jurisdiction, to file or cause to be filed an appearance on behalf of said vessel in any suit you commence in that jurisdiction .... In the alternative, to proceed in New York arbitration in accordance with the arbitration clause in the above referenced charterparty.

Astra then tendered a claim for the damages it sustained as a result of the late delivery—namely, the loss in the price in the gasoil resulting from the fact that it was not delivered by January 5, 2001—which Rover refused to pay. Subsequently, Astra and AOT jointly demanded that Rover arbitrate this claim; each side appointed an arbitrator, pursuant to the terms of the charter party's arbitration clause. The two arbitrators, again consistent with the terms of the arbitration clause, elected a third. After initial submissions to the arbitrators but before the first hearing, Rover informed the arbitrators that it contested Astra's standing to

arbitrate.[1] Astra then filed a petition to compel arbitration in the United States District Court for the Southern District of New York, and the arbitrators suspended further proceedings pending resolution of the standing issue by the district court.

The district court held that non-signatory Astra could not enforce the arbitration clause against Rover. *Astra Oil Co. v. Rover Navigation, Ltd.,* No. 01CIV11296, 2002 WL 31465582 (S.D.N.Y. Nov.5, 2002). Although recognizing that "[t]he Second Circuit has 'been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,'" *id.* at *5 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995)), the district court rejected Astra's argument that Rover was estopped from avoiding arbitration because it found that the late delivery claim was not intertwined with the charter party, which contains no provision for damages due to late delivery of cargo. *Id.* at *6.

Astra timely appealed.

## DISCUSSION

We have addressed the issue of the enforceability of an arbitration agreement against a signatory by a non-signatory in two recent decisions. *See Choctaw Generation Ltd. v. Am. Home Assurance Co.,* 271 F.3d 403 (2d Cir.2001); *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88 (2d Cir.1999). In both cases, we held that the signatory was estopped from avoiding arbitration because "the issues the nonsignatory [was] seeking to resolve in arbitration [were] intertwined with the agreement that the estopped party [had] signed." *Smith/Enron,* 198 F.3d at 98; *accord Choctaw Generation,* 271 F.3d at 406–07.[2]

In *Choctaw Generation,* we allowed enforcement by the non-signatory on an estoppel theory, based on a finding that the controversy between Choctaw and American Home was closely related to the underlying dispute between Choctaw and the signatory under the agreement containing the arbitration clause. *See id.* at 407 ("In short, the controversy presented on this appeal is linked textually to the Construction Contract [containing an arbitration clause], and its merits are bound up with the dispute now being arbitrated between Choctaw and Bechtel."). Although *Choctaw Generation* did not specify the degree of "intertwined-ness" that would be required to support an estoppel theory, we made clear that such a finding should only be made after careful review of the relationship between the parties, the contracts they signed, and the issues that arose between them. *See id.* at 406. Similarly, in *Smith/Enron,* we held that where the defendant had treated affiliated companies—

**1.** Rover had reserved its rights to object to Astra's standing in a letter to the arbitration panel dated October 18, 2001. Rover does not contest AOT's standing to pursue arbitration of these same claims.

**2.** Both Rover and the district court analyzed this case in terms of the theories outlined in *Thomson–CSF,* where we discussed five general principles under which a *signatory* might compel a *non*-signatory to participate in arbitration: incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel. *Thomson–CSF,* 64 F.3d at 777–80. In *Choctaw Generation,* we noted that these theories—with the exception of estoppel—were inapplicable "because among other things in this case it is the non-signatory that seeks to invoke the arbitration clause." 271 F.3d at 406. As we adopt Astra's estoppel argument, we express no view on whether these other theories would ever apply when a non-signatory seeks to compel a signatory to participate in arbitration.

only some of which were signatories to the agreement containing the arbitration clause the other affiliates sought to enforce—as a single entity in filing claims against them in another related lawsuit, and the claims against the defendant for which arbitration was sought were related to the agreement containing the arbitration clause, the defendant was estopped from resisting arbitration. *Smith/Enron,* 198 F.3d at 97–98.

In rejecting Astra's estoppel argument, the district court held that the claims were not intertwined because the charter party was "silent concerning any damages, liquidated or otherwise for late delivery of the cargo . . . . [M]oreover, the issues that Astra Oil and Rover Navigation seek to resolve appear to arise out of . . . Astra Oil's dealings with its customer Sprague Energy Corporation rather than from the Charterparty." *Id.* at *6. "Thus," the district court reasoned, because "the determination of Rover Navigation's liability for late delivery of the cargo does not appear to be contemplated by the Charterparty," Astra's claims "are not so intimately founded in and intertwined with the Charterparty such that Rover Navigation should be compelled to arbitrate those claims." *Id.* (internal quotations omitted). Astra argues that this conclusion is erroneous, relying on the close relationship between Astra and AOT and on the degree to which the late delivery dispute is intertwined with the charter party. For the reasons that follow, we agree.

Astra offers the following evidence of the close relationship among the parties, contracts, and controversies here: AOT and Astra are both owned by Astra Oil Trading N.V., a Netherlands corporation.

An Astra employee, Irek Kotula, negotiated the charter party on behalf of AOT and states that he routinely negotiates charter party contracts for AOT to satisfy Astra's cargo sales contracts. Moreover, the vessel accepted instructions from Astra during the voyage, Astra was the holder of the bill of lading, and Astra and Rover agreed before the district court that the bill of lading was a receipt for cargo title, which, according to Astra, necessitates the conclusion that the contract of carriage between it and Rover (as opposed to AOT and Rover) necessarily was the charter party. After the damage was discovered, Rover issued its General Average demand to Astra as well as AOT; and Astra, not AOT, issued the average bond to secure Rover's General Average claim and allow release of the cargo.[3] This evidence suggests both a close relationship among Astra, AOT and Rover, and that Rover treated Astra as if it were a signatory to the charter party. *Cf. Choctaw Generation,* 271 F.3d at 406 (holding that "the tight relatedness of the parties, contracts and controversies" favors granting the motion to compel arbitration).

More fundamentally, Astra correctly notes that the district court misperceived the relationship between the charter party and the late delivery claim for which arbitration is sought. While Astra concedes that its sales contract with Sprague did not obligate Rover to deliver the gasoil by a date certain, Astra argues that Rover breached duties owed *under the charter party* itself to make timely delivery of the cargo.

First, Astra points to the warranty of seaworthiness under the charter party, arguing that Rover may be held liable to

---

**3.** Although there is some disagreement as to whether the General Average claim against Astra was asserted directly under the charter party or the bill of lading, we do not resolve this dispute because we rest our finding of a close relationship on the entirety of the contacts among the parties.

Astra to the extent that the engine break-down and deck crack were a breach of that warranty and those defects caused an un-due delay, leading to losses under the Sprague sales contract. *See, e.g., Siderius v. M.V. Amilla,* 880 F.2d 662, 665 (2d Cir.1989) ("We have long held that when the charterer of a ship is liable to a cargo owner, and that liability results because the vessel owner has violated its warranty of seaworthiness, the cargo owner may hold the shipowner on his warranty to the charterer." (citation and internal quota-tions omitted)). According to Astra, "[h]ad the Vessel not been delayed by engine failure and structural deficiencies, the cargo would have arrived at its desti-nation in time for [Astra] to have met its sales contract delivery deadline." Appel-lant's Br. at 37. While Rover asserts that the fact that Astra may have a claim under the charter party does not establish that Astra has a right to arbitrate that claim, this contention ignores the purpose for which Astra cites the alleged warranty of seaworthiness—to establish that its claims against Rover are "intertwined with" obli-gations owed by Rover under the charter party.

Second, Astra also makes a claim based on an alleged warranty of speed in the charter party, which provides that "[i]t is understood and agreed that the voyage is to be performed at about 13 knots, weath-er and safe navigation permitting." Astra argues that this warranty obligated Rover to perform at about thirteen knots, and that Rover may be sued for damages here because the vessel stood still for at least twenty-one, days of the voyage as a result of vessel faults and not weather or an inability safely to navigate. While Rover contends that this speed clause should not be read as a "time is of the essence" clause, the only question before us is whether Astra's claims for late delivery are "intertwined" with the charter party, not their ultimate merit.

We hold that Astra seeks to recover for its late delivery claim based on the breach by Rover of duties allegedly owed under the charter party itself. Astra does not assert claims against Rover based on the Sprague sales contract; rather, the price terms of that contract give rise to the damages Astra claims it has sustained. Accordingly, the petition to compel arbi-tration should have been granted based on (1) the undisputed evidence of a close cor-porate and operational relationship be-tween Astra and AOT; (2) the fact that Astra's claims against Rover, for Astra seeks arbitration, are brought directly un-der the charter party signed by Rover and AOT; and (3) the fact that Rover treated Astra as if it were a party to the charter party, by accepting direction from Astra during the voyage, by asserting a General Average demand against Astra (as well as AOT), and by accepting a General Average bond from Astra (on behalf of Astra and AOT). *See Thomson–CSF,* 64 F.3d at 779 (recognizing that signatories have been bound to arbitrate "at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and in-tertwined with the underlying contract ob-ligations" (internal quotation marks and citation omitted)).[4]

---

4. Because we find that the estoppel principles of *Smith–Enron* and *Choctaw Generation* suf-fice to compel arbitration, we do not reach Astra's alternative argument, under *State Trading Corporation of India v. Grunstad* *Shipping Corp. (Belgium) N.V.,* 582 F.Supp. 1523 (S.D.N.Y.1984), that "the consignee holder of a Tanker Bill of Lading, as non-signatory to the Tanker Voyage Charter Party contract with an arbitration clause, may nev-

## CONCLUSION

We hold that Rover is compelled to arbitrate Astra's claims for late delivery based on the alleged breaches of the charter party. We therefore vacate the district court's denial of the petition and remand with instructions to grant the petition to compel Rover to arbitrate.

ertheless arbitrate its cargo claim against the signatory/Vessel owner if the arbitration clause is broad rather than narrow." Appellant's Br. at 3. Nor do we reach Astra's contention that the terms of the LOU obligated Rover to arbitrate the late delivery claims.