In the Matter of the **ARBITRATION BETWEEN HALCOT NAVIGATION LIMITED PARTNERSHIP, Petitioner,**

and

**STOLT–NIELSEN TRANSPORTATION GROUP, BV and Anthony Radcliffe Steamship Company Limited, Respondents.**

No. 06 Civ. 12927(VM).

United States District Court,
S.D. New York.

June 12, 2007.

David A. Nourse, Nourse & Bowles, L.L.P., New York, NY, for Petitioner.

Don Philip Murnane Jr., Manuel Antonio Molina, Freehill, Hogan & Mahar, LLP, New York NY, for Respondents.

## DECISION AND ORDER

MARRERO, District Judge.

Petitioner Halcot Navigation Limited Partnership ("Halcot") brought this action pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 9 U.S.C. § 201 *et seq.*[1] Halcot seeks to vacate a partial arbitration award dated August 4, 2006 (the "Arbitration Award") which held that respondent Anthony Radcliffe Steamship Company Limited ("Anthony Radcliffe"), although a non-signatory to the arbitration agreement between Halcot and respondent Stolt–Nielsen Transportation Group B.V. ("Stolt–Nielsen"), was entitled to assert its claim in arbitration against Halcot. Respondents cross-move to confirm the Arbitration Award, or alternatively, to compel arbitration. For the reasons discussed below, Halcot's motion to vacate the Arbitration Award is DENIED and respondents'

---

1. Halcot originally brought this petition under the Federal Arbitration Act (the "FAA"). 9 U.S.C. § 1 *et seq.* However, Halcot subsequently determined that the New York Convention applied and respondents do not contest this assertion.

cross-motion to confirm the award is GRANTED.

## I. *BACKGROUND* [2]

On May 6, 1996 Halcot entered into a time charter agreement (the "Time Charter") with Stolt–Nielsen,[3] which provided that Halcot was to lease the HYDE PARK, a flag tank vessel, to Stolt–Nielsen for a set period of time, with the option to extend the term. After several extensions, the HYDE PARK was redelivered to Halcot in October of 2006.

In early 2002, Halcot, through its ship management company, Zodiac Maritime Agencies, Ltd. ("Zodiac"), scheduled the HYDE PARK for drydocking in order for the vessel to be surveyed and serviced. During the drydocking the HYDE PARK would be "off-hire." Stolt–Nielsen was advised of the scheduled drydocking and the estimated time Zodiac anticipated the drydocking would take, which was approximately nine days. The vessel arrived in Bahrain and entered drydock on February 15, 2002. However, the survey of the vessel revealed that its internal structure required substantial renewal of steel. As a result, the drydocking was extended for several weeks.

Meanwhile, Stolt–Nielsen's trading affiliate, Anthony Radcliffe, entered into a voyage charter (the "Voyage Charter") with Kolmar Petrochemicals AG ("Kolmar"). Under the terms of the Voyage Charter, the HYDE PARK was to be ready for loading of Kolmar's cargo in Sikka, India between February 26 and March 1, 2002 (the "Laycan" dates). The Laycan dates were agreed to based on the originally anticipated drydocking schedule. Because of the unexpected length of the drydocking, the HYDE PARK was not ready until approximately March 20, 2002.

As a result of the delays, Kolmar was forced to pay more for its cargo due to increases in market prices. Kolmar subsequently commenced arbitration against Anthony Radcliffe seeking recovery of damages arising from its reliance on the representation that the HYDE PARK would be ready by the Laycan dates set forth in the Voyage Charter. Kolmar's claims against Anthony Radcliffe were settled for approximately $372,500. Stolt–Nielsen paid this amount on behalf of Anthony Radcliffe.

On February 27, 2002, Stolt–Nielsen had advised Zodiac that it was "faced with significant potential damages and claims from Charterers of cargo fixed to load after the drydock" and that it would hold Halcot "responsible for any damages that may be incurred on [Stolt–Nielsen's] behalf and claims from third parties." (Petition, ¶ 12.) Halcot was not made aware of the identity of the parties involved in the claim until April 25, 2002 when it received a copy of a letter from Kolmar asserting its claim against Anthony Radcliffe. Halcot emphasizes that neither it nor Zodiac was aware that Anthony Radcliffe had any interest in the HYDE PARK prior to April 25, 2002.

---

**2.** The factual recitation below is derived from the following documents, including the exhibits attached thereto: Petition to Vacate Arbitration Award, dated Nov. 3, 2006 (the "Petition"); the Affidavit of Don Murnane, Jr. in Opposition to Petition and in support of Cross–Motion to Confirm, dated Dec. 15, 2006 ("Murane Aff."). Except where specifically quoted, no further citation to these documents will be made.

**3.** The Time Charter was actually entered into between Halcot Shipping Corporation and Stolt Parcel Tankers Inc. The Time Charter was later amended to acknowledge Halcot and Stolt–Nielsen as successors-in-interest. (*See* Petition, Ex. A, Addenda 6, 7.)

In May of 2004, Stolt–Nielsen demanded arbitration in the United States with Halcot under the terms of the Time Charter. Stolt–Nielsen's demand referenced the arbitration between Anthony Radcliffe and Kolmar, asserting that Stolt–Nielsen, as assignee of the claim, was entitled to indemnification for the costs incurred in defending against Kolmar's claim, including the settlement amount. In December of 2004 Stolt–Nielsen amended its demand for arbitration, asserting the demand on behalf of itself and Anthony Radcliffe.

Halcot did not dispute its obligation to arbitrate disputes with Stolt–Nielsen arising under the Time Charter. It asserts, however, that it did not believe claims asserted by or on behalf of Anthony Radcliffe were arbitrable. While Halcot agreed to appoint an arbitrator in response to Stolt–Nielsen's amended demand for arbitration, Halcot's December 16, 2004 letter specifically states that "this appointment is made without prejudice to Halcot's position that the claim is not properly one for arbitration under the time charter party between Halcot and Stolt . . ." (Petition, Ex. E.)

Halcot thereafter served Stolt–Nielsen with a request for the production of documents seeking information regarding the relationship between Stolt–Nielsen and Anthony Radcliffe, the assignment and the basis for the indemnity claim. Failing to receive the response it desired, Halcot, through its counsel, wrote to the arbitration panel on June 8, 2005, requesting that the "preliminary issue as to whether the claim for which [Stolt–Nielsen] has demanded arbitration with Halcot is properly subject to arbitration" be resolved before any further evidentiary proceedings went forward. (Murane Aff., Ex. F.) Halcot requested that the arbitration panel require Stolt–Nielsen to adequately respond to its document request. Halcot argued

that "it may be that the issue of arbitrability can be resolved on the basis of the documents that [Stolt–Nielsen] produces." (*Id.*) Halcot went on to state that if not, "it would be appropriate for the Panel, on being advised that the issue has not been resolved, to set a briefing schedule for the submission of memoranda of law and exhibits concerning the arbitrability issue so that this issue may be heard and determined by the panel." (*Id.*)

In August of 2006, the arbitration panel issued a decision in which the majority of the panel (two of the three arbitrators) found that Anthony Radcliffe and Stolt–Nielsen both had standing to arbitrate against Halcot and that they did not have to respond to Halcot's request concerning the relationship between the two entities. One arbitrator dissented on the ground that there was no basis for Anthony Radcliffe, as a non-signatory to the Time Charter, to assert its claims in arbitration.

## II. *DISCUSSION*

### A. *WAIVER*

Halcot asserts that the Arbitration Award should be vacated because whether Anthony Radcliffe is entitled to assert its claim in arbitration is a matter for the court to decide, not the arbitrators. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Respondents contend, however, that Halcot has waived its right to object to proceeding with the arbitration against Anthony Radcliffe because it voluntarily submitted the issue of arbitrability to the

arbitrators. *See Opals on Ice Lingerie v. Bodylines Inc.,* 320 F.3d 362, 368 (2d Cir. 2003) ("[I]f a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration."); *Halley Optical Corp. v. Jagar Int'l Marketing Corp.,* 752 F.Supp. 638, (S.D.N.Y.1990) (having contested the applicability of the arbitration clause in front of the arbitrators, party waived his right to object; "[t]o find otherwise would allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitrate.").

Respondents point to Halcot's correspondence to the arbitration panel wherein Halcot specifically stated that if it did not receive adequate documentation from Stolt–Nielsen sufficient to address its concerns regarding the arbitrability of the indemnification claim, Halcot urged that the parties submit briefs "concerning the arbitrability issue so that this issue *may be heard and determined by the panel."* (Murane Aff., Ex. F (emphasis added).) Respondents also emphasize that Halcot subsequently briefed the arbitrability issue for the arbitration panel. Thus, respondents contend that Halcot clearly submitted the question of arbitrability to the arbitration panel and cannot now raise this argument anew before this Court.

Halcot contends, however, that from the beginning it had made clear that it was proceeding without prejudice to its assertion that the claim at issue was not arbitrable. Moreover, Halcot emphasizes that the arbitrability issue was briefed in the context of its request for production of documents.[4] Halcot, in all of its correspondence indicates that before proceeding with the arbitration, it sought documents from Stolt–Nielsen regarding the indemnity claim, which it argued might have resolved the question of arbitrability. Even in its June 8, 2005 letter, in which Halcot explicitly requested the arbitration panel decide the arbitrability issue, it also again stated it had made its arbitration "appointment expressly without prejudice to the issue as to whether Stolt's 'indemnification claim' is properly subject to arbitration." (*Id.*)

The Supreme Court has made clear that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In *First Options,* the Supreme Court stated that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." *Id.* at 946, 115 S.Ct. 1920.

However, in *First Options,* the Kaplans (the party arguing to the court that they did not agree to have the arbitrator decide arbitrability) filed a "written memorandum objecting to the arbitrator's jurisdiction." *Id.* As the Supreme Court's decision indicated, the Kaplans "were forcefully objecting to the arbitrators deciding their dispute with First Options." *Id.* Here, Halcot never objected to the arbitration panel determining the arbitrability issues it raised. In fact, Halcot urged the panel to do so.

---

4. Indeed, the decision by the arbitration panel acknowledges as much: "Halcot argues that before an informed determination of the standing of [Anthony Radcliffe], and by extension, that of [Stolt] for 'indemnity' can be made, it is essential that the panel direct Stolt to comply with Halcot's discovery request." (Petition, Ex. H at 6.)

■ Thus, Halcot's reliance on *First Options* is misplaced, as Halcot conflates case law regarding objections to the arbitrator's authority to decide arbitrability with objections to arbitrability itself. Although Halcot invoked its reservation of rights regarding arbitrability, it never indicated that it did not want the arbitrators to decide the arbitrability issue. While Halcot argues that its reservation of rights at a minimum was sufficiently ambiguous that this Court can not find clear and unmistakable evidence of waiver, simply stating a general reservation of rights with respect to arbitrability without in any way specifically objecting to the arbitrator's ruling on an issue submitted and briefed, does not preserve Halcot's right to object to that ruling. *Cf. Opals On Ice,* 320 F.3d at 369 ("the fact that a party forcefully objects to having an arbitrator decide a dispute—as Bodylines clearly did—suggests an unwillingness to submit to arbitration.") (*citing First Options,* 514 U.S. at 946, 115 S.Ct. 1920).

Halcot's assertion that it was proceeding in arbitration without prejudice to its position that the claim was not arbitrable does not equate to asserting a position that the arbitrators should not decide arbitrability. While Halcot was seeking a response to its demand for documents, it was certainly clear that this request was related to the question of arbitrability and Halcot fully briefed its position on why the claims at issue were not arbitrable. What Halcot's proposition essentially amounts to is enabling it to create a win-win outcome for itself, as a means of having it both ways, allowing the arbitrability issue to proceed to adjudication by the arbitrators and accepting the result if favorable to Halcot, or rejecting it if unfavorable and litigating the matter in court.

Respondents correctly contend that to hold otherwise would impermissibly afford Halcot a "second bite at the apple" on the issue of arbitrability. Respondents direct the Court to its letter to Halcot dated December 3, 2004, demanding arbitration and attaching for Halcot's review their draft motion to compel arbitration. (*See* Murane Aff. Ex. D.) Halcot clearly understood that respondents anticipated Halcot's likely objections to the arbitrability of their claim and were prepared to have a Federal court resolve the issue. If Halcot did not want the arbitrability issue decided by the arbitrators it could have refused to appoint an arbitrator and proceeded directly to Federal court at that point. Alternatively, it could have moved for a stay of arbitration as soon as respondents failed to adequately respond to its document request, or it could have moved for a stay once respondents began arguing the substance of the arbitrability issue to the arbitration panel. Having instead fully contested the arbitrability of respondents claim before the arbitrators without indicating any objection to the arbitrators deciding this issue—indeed, while urging that the arbitrators decide it—Halcot cannot now seek independent review of the arbitration panel's unfavorable decision. *See Opals on Ice,* 320 F.3d at 368.

**B. VACATING THE DECISION IS NOT OTHERWISE WARRANTED UNDER THE NEW YORK CONVENTION OR THE FAA**

■ Having waived its right to independent review of the Arbitration Award, Halcot has to demonstrate that the Arbitration Award should be vacated based on one of the seven grounds set forth in Article V of the New York Convention. Alternatively, although the arbitration is governed by the New York Convention, as the award was rendered in the United States, this Court can also look to domestic arbitration law, specifically the FAA, in deciding whether grounds to vacate the award exist.

*See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 21 (2d Cir.1997). Thus, the Court can consider the four limited grounds for vacating an award set forth in 9 U.S.C. § 10(a), and can also consider whether the decision evidenced a "manifest disregard for the law." *See Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 64–65 (2d Cir.2003).

Halcot asserts [5] that the arbitration decision should be vacated based on Article V(1)(c) of the New York Convention which allows a Court to refuse to recognize an arbitral award where "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration . . ." Halcot also argues that the arbitrators' decision constitutes misconduct which prejudiced its rights, and that the arbitrators exceeded their powers in issuing the Arbitration Award, in contravention of Section 10(a)(3) and (4) of the FAA.[6]

■ Under both the New York Convention and the FAA, the party opposing enforcement of an arbitration award has the burden of proving that a valid ground for vacating the award exists, and the burden is a "heavy one." *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir.2005); *InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG,* 373 F.Supp.2d 340, 347 (S.D.N.Y.2005). The Court finds that Halcot has failed to meet this burden.

■ Halcot's asserted ground for vacating the award under Article V(1)(c) of the New York Convention mirrors 9 U.S.C. § 10(a)(4), in that "both provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration." *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier,* 508 F.2d 969, 976 (2d Cir.1974). Having already determined that Halcot agreed to submit the arbitrability issue to the arbitrators, the Court also finds that this is clearly not a case where the arbitrators exceeded their powers. Nor is it one in which the issue decided was not contemplated by the parties as falling within the scope of submission. As Halcot requested a determination and briefed the issue of arbitrability to the arbitrators, it cannot claim that the issue decided falls outside the scope of submission.

■ Equally unavailing is Halcot's assertion that the arbitrators were guilty of misconduct under 9 U.S.C. § 10(a)(3). The arbitrators did nothing more than decide an issue put before it by the parties. While Halcot now argues that the arbitrators engaged in misconduct in deciding the arbitrability issue when all Halcot sought was a determination on its document requests, as discussed above, it was not unreasonable for the arbitrators to decide the arbitrability issue under the circumstances of this case. Halcot argued that additional documentation was necessary for it to de-

---

**5.** *See* Petitioner's Memorandum of Law Replying to Respondents' Opposition to Petition to Vacate Arbitration Award and Opposing Respondents' Cross–Motion to Confirm Award or, Alternatively, to Compel Arbitration, dated January 16, 2007 ("Petitioner's Opp."), at 2.

**6.** 9 U.S.C. § 10(a)(3) allows a district court to vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing

to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(4) contemplates vacating the award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."

termine whether a valid indemnity claim existed. Respondents argued that no additional documentation was necessary to find that Authony Radcliffe could assert the claim at issue through equitable estoppel. The arbitrators agreed with respondents, which necessarily entailed deciding the arbitrability of the claim. Having done nothing more than resolve a dispute argued to it by the parties, the arbitrators cannot now be accused of misconduct because Anthony Radcliffe does not agree with the panel majority's conclusions.

Finally, there is no evidence of a manifest disregard of the law by the arbitrators. The "showing required to vacate an arbitration award based on a manifest disregard of the law is exceptionally high. The Second Circuit has held that any plausible reading of an award that fits within the law will sustain it." *InterChem Asia 2000*, 373 F.Supp.2d at 349. Here, the panel majority's reading of the law was certainly plausible. There is no evidence at all that they ignored the law or improperly applied it. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389–90 (2d Cir.2003).

In fact, as discussed below, based upon an independent review, with no deference to the panel majority's determination, this Court finds that Halcot could be estopped from avoiding arbitration with Anthony Radcliffe.

## C. *ANTHONY RADCLIFFE CAN COMPEL ARBITRATION BASED ON EQUITABLE ESTOPPEL*

■ The arbitrators determination that Anthony Radcliffe could compel Halcot to arbitrate although a non-signatory to the arbitration agreement relied on the Second Circuit's decision in *Choctaw Generation Ltd. Partnership v. American Home As-*

surance Co., 271 F.3d 403, 406 (2d Cir. 2001). There, the Second Circuit held that a court can "estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." The Second Circuit has made clear that a finding of sufficient "intertwined-ness" to warrant estoppel "should only be made after careful review of the relationship between the parties, the contracts they signed, and the issues that arose between them." *Astra Oil Company, Inc. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279 (2d Cir.2003).

In *Astra Oil*, similar to the present case, AOT Trading A.G. ("AOT") entered into a charter party with Rover Navigation, Ltd. ("Rover"). Astra Oil, Inc. ("Astra"), which had not signed the charter party, entered into a gasoline sales contract with a third party. As a result of vessel problems, Astra lost money on its gasoline sales contract due to changes in the price of oil. Astra sought to recover its damages from Rover and sought to compel arbitration. Rover opposed arbitration because Astra was a nonsignatory to the charter party.

While the district court agreed with Rover, the Second Circuit found Rover was estopped from avoiding arbitration based on (1) the "undisputed evidence of a close corporate and operational relationship between" Astra and AOT; (2) the fact that the claims to be arbitrated were "brought directly under the charter party;" and (3) "the fact that Rover treated Astra as if it were a party to the charter party . . . ." *Id.* at 281.

Here, Halcot cannot reasonably dispute the close corporate and operational relationship between Stolt–Nielsen and Anthony Radcliffe.[7] Moreover, the claim Antho-

---

7. The Arbitration Award indicates that Antho-  ny Radcliffe is a "trading arm" subsidiary

ny Radcliffe seeks to assert is brought directly under the Time Charter. The Voyage Charter between Anthony Radcliffe and Kolmar is in essence a subcontract under the Time Charter, and the claim arises out of Halcot's alleged failure to comply with terms of the Time Charter.

Halcot's argument to the arbitrators and again to this Court is that equitable estoppel is inappropriate because unlike in *Astra,* Halcot did not treat Anthony Radcliffe as if it were a party to the Time Charter. The Arbitration Award directly addressed Halcot's argument:

> Neither can the majority accept the emphasis Halcot places on the Second Circuit's finding in *Astra v. Rover* that Rover treated the non-signatory as though it was a party to the charter party. Rather than creating a mandatory three point criteria by which future cases are to be judged, we read the finding to recognize an added, but not necessarily essential, condition of fact for the court to take into account. When found to be present along with the other two essential criteria, the signatory's efforts to avoid arbitration with a proper non-signatory will be made even more difficult, if not impossible.

(*See* Murane Aff., Ex. J at 9.)

The panel majority correctly concluded that courts in this Circuit have not introduced a conduct requirement into the equitable estoppel test post-*Astra Oil. See JLM Industries Inc. v. Stolt–Nielsen S.A.,* 387 F.3d 163, 177–78 (2d Cir.2004) (indicating equitable estoppel was a "fact-specific" analysis and there was no "minimum quantum of intertwinedness"). As this court recently held, the "standard that governs [equitable estoppel] looks to the degree to which the issues sought to be arbitrated are 'intertwined with the agreement that

the estopped party has signed,' not to evidence that the estopped party actually intended or expected that any dispute with the non-signatory would be subject to arbitration." *Carroll v. Leboeuf, Lamb, Greene & MacRae, LLP,* 374 F.Supp.2d 375, 378 (S.D.N.Y.2005). Whether or not Halcot treated Anthony Radcliffe as a party to the Time Charter or expected to arbitrate any dispute with Anthony Radcliffe is not determinative of whether Halcot should be estopped from avoiding arbitration.

The central inquiry is whether the issue Anthony Radcliffe seeks to arbitrate is intertwined with the Time Charter. Here, it clearly is because the Time Charter governed the leasing of the vessel and the arbitration clause contemplated that resolution of any disputes arising out of the leasing be resolved by arbitration. Thus, Anthony Radcliffe's claim is tied to the Time Charter because the claim it seeks to assert "depend[s] upon rights and obligations set forth" in the Time Charter. *See Fraternity Fund, Ltd. v. Beacon Hill Asset Mgmt.,* 371 F.Supp.2d 571, 577–78 (S.D.N.Y.2005). The arbitrators correctly concluded that Halcot should not be able to avoid arbitration because it was Stolt–Nielsen's trading affiliate, and not Stolt–Nielsen itself, that contracted for the shipment of cargo aboard the vessel.

■ Particularly where "the estopped party will be arbitrating with counterparties to the agreement containing the arbitration clause," the doctrine of equitable estoppel "depend[s] upon the broad federal policy favoring arbitration" and "considerations of adjudicative economy," not upon "consent" to arbitrate. *Id.* Halcot has never contested that its disputes with Stolt–Nielsen are properly subject to arbitration,

---

within the Stolt Nielsen group family of companies and an affiliate of Stolt Parcel Tankers

Inc., the predecessor-in-interest to Stolt–Nielsen. (*See* Murane Aff., Ex. J at 7.)

thus adjudicative economy supports a finding of equitable estoppel compelling Halcot to arbitrate this clearly intertwined claim with Anthony Radcliffe.

Thus, while the Court's decision regarding waiver supports a finding that the Arbitration Award should be confirmed, on separate grounds, if the Court reviewed the issue independently, it would grant respondents the alternative relief they request and compel arbitration.

Accordingly, the Court denies Halcot's petition to vacate the Arbitration Award and grants respondents' motion to confirm the Arbitration Award.[8]

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition to vacate the arbitration award filed by Halcot Navigation Limited Partnership (Docker No. 1) is DENIED; and it is further

**ORDERED** that the motion of respondents' Stolt–Nielsen Transportation Group, BV and Anthony Radcliffe Steamship Company Limited to confirm the award (Docket No. 9) is GRANTED.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

---

8. Finally, the parties' briefs also argue over whether Stolt–Nielsen can properly bring an accelerated indemnity claim against Halcot. This issue was raised by respondents, not Halcot's petition to vacate the Arbitration Award. The Court agrees with Halcot that it is not clear from the Arbitration Award that the panel majority decided the merits of this issue, but instead focused on Anthony Radcliffe's standing. Regardless, the issue of whether Stolt–Nielsen can proceed with its accelerated indemnity claim is a question related to "the potential merits of its underlying claim." *AT & T Technologies*, 475 U.S. at 647, 106 S.Ct. 1415. As such, the "court has no business weighing the merits of the grievance," *id.*, since Halcot has never disputed the arbitrability of claims asserted directly by Stolt–Nielsen. Thus, the Court finds it unnecessary to address the merits of Stolt–Nielsen's accelerated indemnity claim in order to confirm the arbitration award.