OPINION OF THE COURT
James A. Yates, J.
Merrill Lynch International Finance, Inc. (MLIFI) seeks payment on a promissory note from Conway Donaldson, a former registered broker for Merrill Lynch Pierce Fenner & Smith (MLPFS), who allegedly owes money on a low-interest retention loan he received upon MLPFS’ merger with Bank of America Corporation (BofA). MLIFI, an affiliate of MLPFS and a subsidiary of BofA/Merrill Lynch & Co., Inc., filed a motion for summary judgment in lieu of complaint (motion sequence No. 001), pursuant to CPLR 3213, seeking judgment equal to the unpaid balance of the retention loan. The company also seeks to recover interest and attorneys’ fees.
Conway Donaldson has moved to compel arbitration (motion sequence No. 002), arguing that the dispute between the parties arises from or relates to his employment with MLPFS, which is bound to arbitrate any employment-related dispute under the Rules of the Financial Industry Regulatory Authority, Inc. (FINRA). FINRA requires that disputes arising from the “business activities of a member or associated person” be arbitrated. Defendant is a registered associated person under FINRA. In response, MLIFI contends that it is not a broker-dealer and therefore, it is not required to arbitrate disputes under FINRA rules.
This court, on October 1, 2009, denied MLIFI’s motion for summary judgment in lieu of complaint and granted Donaldson’s motion to compel arbitration. Subsequently, in light of similar actions with unrelated brokers, but raising the same issues and with varied results, brought before Justices Barbara R. Kapnick (Merrill Lynch Intl. Fin., Inc. v Collins, Sup Ct, NY County, Oct. 15, 2009, index No. 601997-2009), O. Peter Sherwood (Merrill Lynch Intl. Fin., Inc. v Krieger, Sup Ct, NY County, Dec. 9, 2009, index No. 112071-2009) and Bernard J. Fried (Merrill Lynch Intl. Fin., Inc. v Gutkin, Sup Ct, NY County, Dec. 17, 2009, index No. 601176-2009), plaintiff moved for leave to reargue.
I. Background
A. The Relationship among the Parties
There are three interested parties in this action. MLPFS (not a named party) was a Delaware corporation with its principal *393 place of business in New York. As an investment banking firm, it offered research and brokerage services to investors. MLPFS failed in 2008 and was bought by BofA. After January 1, 2009, MLPFS became a wholly-owned subsidiary of BofA/Merrill Lynch & Co., Inc., a leading global bank and wealth management franchise.
MLIFI is also a subsidiary of BofA and was a sister company to MLPFS. MLIFI is the legal entity which had extended a loan to certain brokers employed by MLPFS conditioned upon continued employment at MLPFS and which, in the above-mentioned cases, is currently pursuing a number of brokers for unpaid balances.
Defendant Conway Donaldson was employed as a financial advisor and registered broker at MLPFS from June 2000 until April 2009.
B. The Arbitration Clause
Two written agreements are at issue. The first is an employment contract between Donaldson and MLPFS which contains a broad arbitration clause, requiring arbitration of all employment-related disputes. The second agreement, between Donaldson and MLIFI, is the promissory note which contains a forum selection clause choosing the courts of New York.
As a member of FINRA, MLPFS was required to arbitrate any dispute with its employees before FINRA’s Dispute Resolution Unit. Prior to his employment, defendant signed form U-4 which compels member firms in the securities industry to arbitrate employment disputes. MLIFI is not a FINRA member.
C. The Promissory Note
As a preliminary matter, the facts surrounding Donaldson’s execution of the promissory note are in dispute. On October 24, 2008, Donaldson received a letter indicating that he was eligible to receive a forgivable loan as part of the “Advisor Transition Program” (ATP) in connection with Merrill Lynch’s upcoming merger with BofA. ATP was a bonus retention loan program whereby loans were made available to certain employees to provide an incentive for those employees to stay with the company after the merger. Productive brokers received up to 100% of annual production, with three quarters of the amount paid up-front in cash under a seven-year note. Defendant and other employees were directed to a company Web site where they clicked their acceptance electronically. The October 24, *394 2008 letter was accompanied by an agreement entitled the “ATP Agreement” and a promissory note for $158,941. Plaintiff alleges that on November 5, 2008, Donaldson executed the promissory note and began receiving payments. Subsequently, he allegedly approved an amendment to the agreement on November 11, 2008. At that time, defendant was asked by MLPFS to return to the company Web site to reconfirm his acceptance. He claims that his only options were to electronically confirm or not confirm his prior agreement with MLPFS to participate in the program. As part of the original agreement, he promised that he would repay the money if he left MLPFS. Donaldson contends that unbeknownst to him, MLPFS purportedly substituted plaintiff as the named lender under the program.
It is undisputed that the retention loan program between MLPFS and its employee brokers would be subject to mandatory arbitration under FINRA’s rules. However, plaintiff contends that Donaldson has signed an agreement consigning the action exclusively to the Supreme Court of New York State. Defendant counters that paragraph 12 of the signed promissory note, at the time of the loan, contained an arbitration clause. Plaintiff contends that clause was later eliminated in the November 11, 2008 reconfirmation of the initial November 5, 2008 promissory note. Additionally, plaintiff claims that in January 2009, Donaldson once again re-approved the loan with MLIFI as directed by MLPFS.
After the money was lent, MLPFS, as his employer, oversaw the repayment of the loan by deducting monies from his paycheck, which payments were allegedly forwarded to MLIFI. Four months after obtaining the loan, Donaldson quit MLPFS. MLIFI now claims that the unpaid balance on the loan became payable in full upon Donaldson’s resignation. Donaldson contends that at no time was he informed that the loan agreement was with any party other than his employer, MLPFS, or that he had waived his right to arbitrate with his employer. Furthermore, he contends that he had never seen the modified note until commencement of this action. The alleged altered loan was transmitted, through MLPFS e-mail, electronically. Finally, he argues that the promissory note was not presented for his signature in a manner where its terms and nature were obvious. As a result, he contends that he never knowingly consented to the note’s litigation clause. Plaintiff MLIFI argues that as lender of the loan, independent of MLPFS, it is not bound to arbitrate and that arbitration is not required under the plain terms of the loan agreement.
*395 At this time, there is a factual dispute as to whether Donaldson signed an agreement or contract with MLIFI or with MLPFS as lender, and whether MLIFI was later substituted as the lending party without defendant’s knowledge. If Donaldson was not informed that MLIFI would be substituted for MLPFS as the lending party, as he contends, it would be inappropriate for the court to enforce a waiver. (See e.g. Thomas James Assoc., Inc. v Jameson, 102 F3d 60, 66-67 [2d Cir 1996]; Merrill Lynch Intl. Fin., Inc. v Gutkin, Sup Ct, NY County, Fried, J., index No. 601176-2009.) If Donaldson’s allegations raise a question of fact for the court, a hearing would be required.
In this case, however, the question need not be reached. Regardless of the identity of the lender named on the instrument, or the circumstances of the alleged execution by Donaldson, arbitration is required. Recognizing that FINRA’s arbitration clause is nonwaivable, a signature by Donaldson, on an employment-related compensation arrangement which purports to bypass arbitration is without significance.
II. Discussion
The issue here is whether MLIFI may avoid arbitration because it was not a signatory to the arbitration agreement or a member of FINRA. A nonsignatory can be compelled to arbitrate in certain circumstances. “[I]t is not the case that an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision” (Denney v BDO Seidman, LLP, 412 F3d 58, 71 [2d Cir 2005] [internal quotation marks and citations omitted], quoting Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d 773, 776 [2d Cir 1995]). “Ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate” (Deloitte Noraudit A/S v Deloitte Haskins & Sells, U.S., 9 F3d 1060, 1064 [2d Cir 1993] [applying estoppel to bind nonsignatory to arbitration in international dispute]).
Normally, “a court will not order a party to submit to arbitration absent evidence of that party’s unequivocal intent to arbitrate the relevant dispute, and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration” (Primavera Labs, v Avon Prods., 297 AD2d 505, 505 [2002] [internal quotation marks and citations omitted]). However, the Court of Appeals recognizes that “in certain limited circumstances the need to impute the intent to a nonsignatory” is appropriate (TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339 [1998]). As well, consent to arbitration has been *396 inferred where the nature of the relationship between a signatory and nonsignatory indicates that the agreement to arbitrate should be extended in the interest of fairness (Astra Oil Co., Inc. v Rover Nav., Ltd., 344 F3d 276, 280-281 [2d Cir 2003]).
Accepting as true, for the moment, that Donaldson borrowed money from MLIFI, and that MLIFI was not a member of FINRA nor a signatory to an agreement to arbitrate, there are five theories under which a nonsignatory to an agreement may nevertheless be bound: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/'‘alter ego”; and (5) estoppel (Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d 773, 776 [1995]). This case presents issues of agency and estoppel.
One circumstance that warrants estoppel is when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted conduct by both the nonsignatory and the other signatory to the contract (Denney v BDO Seidman, LLP, 412 F3d 58 [2005]). As stated in EDO Seidman-.
“We have previously indicated that signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where ‘a careful review of “the relationship among the parties, the contracts they signed . . . , and the issues that had arisen” among them discloses that “the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.” ’ JLM Industries v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir.2004) (quoting Choctaw Generation Ltd. P’ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir.2001)); see also Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 209 (2d Cir.2005) (‘A useful benchmark for relational sufficiency can be found in our estoppel decision in Choctaw . . . where we held that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.’ (internal quotation marks and citation marks omitted)).” (Id. at 70.)
Here, as well, there is relational sufficiency justifying invocation of the doctrine of equitable estoppel. There exists a close and connected relationship between MLIFI, the nonsignatory, *397 and MLPFS, the signatory to the arbitration agreement, justifying adherence to the obligation to arbitrate. (See e.g. A.W. Fiur Co. v Ataka & Co., 71 AD2d 370, 373-374 [1st Dept 1979]; Matter of Sbarro Holding [Shien Tien Yuan], 111 Misc 2d 910 [Sup Ct, Kings County 1981], affd 91 AD2d 613 [2d Dept 1982].)
Furthermore, aside from the issue of relational sufficiency, a nonsignatory who exploits a contract containing an arbitration clause is estopped from repudiating that clause (see Matter of SSL Intl., PLC v Zook, 44 AD3d 429 [1st Dept 2007] [nonsignatory affiliate that received service fees generated from transactions under agreement estopped from avoiding arbitration clause]). Here, the essential contract was an agreement between Donaldson and MLPFS to enhance the terms of his compensation in order to induce him to continue as a broker for MLPFS during and after the takeover; the loan was part of his employment contract. The loan, on favorable terms, was offered as part of his compensation package with MLPFS, which by FINRA rules requires arbitration when a dispute arises. MLIFI had no reason to offer a “sweetheart” loan, which this was, other than to work in concert, merely as a financing arm, with, and as an agent of, MLPFS to fund the loan on behalf of MLPFS and BofA in return for Donaldson’s agreement to stay on as an employee of MLPFS and BofA. MLIFI contends, in this case, that the loan was an independent promise for repayment, but the contention is belied by the very fact that the loan was unusually favorable, without customary consideration for the favorable terms, and conditioned upon employment with MLPFS, or its successor, which came due solely because Donaldson left his employment with MLPFS. In simple terms, it was an employment benefit made to induce continued employment. FINRA’s arbitration requirement cannot be avoided simply by having an affiliate of MLPFS or a subsidiary of BofA fund the employment agreement. Accordingly, the court finds that BofA and MLPFS reaped the benefits of the employment agreement while merely using MLIFI as a financing arm. The electronically-confirmed amendment to the employment benefit cannot be used to nullify the commitment to arbitrate. (See Hoffman v Finger Lakes Instrumentation, LLC, 7 Misc 3d 179 [Sup Ct, Monroe County 2005].)
Principles of estoppel and agency prohibit the attempt to avoid compulsory FINRA arbitration by substituting MLIFI in place of MLPFS as the lender on the note. FINRA’s arbitration requirement is nonwaivable and cannot be circumvented by *398 simply substituting an affiliate as a party in an employment-related dispute.
III. The Motion for Leave to Reargue
In this case, plaintiff has failed to establish that the court misapprehended any relevant facts or misconstrued the applicable law to the facts of the case. A motion for leave to reargue cannot be used by an unsuccessful party to obtain a second chance to reargue issues already decided. Upon consideration of the motion for leave to reargue, the court finds that the arbitration agreement applies to the loan by MLIFI and, accordingly, the motion for leave to reargue is denied. Accordingly, it is ordered, that the parties shall proceed to arbitration, as previously ordered, in accordance with the agreement between them; and it is further ordered, that this action is stayed pending the outcome of arbitration.