NO. 07-04-0039-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MARCH 16, 2005



______________________________




FIRST UNITED BANK, DIMMITT, TEXAS, 


SUCCESSOR TO SHADOW HILLS NATIONAL BANK, APPELLANT



V.



PANHANDLE PACKING AND GASKET, INC., INDIVIDUALLY AND


D/B/A ARROW BEARINGS AND INDUSTRIAL SUPPLY AND NAMMCO


FABRICATION AND LUBBOCK GASKET AND SUPPLY; AND


LONE STAR GASKET AND SUPPLY, INC., APPELLEES



_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-513,275; HONORABLE J. BLAIR CHERRY, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.


OPINION




 First United Bank appeals the judgment of the trial court following a jury trial that
Panhandle Packing and Gasket, Inc., (1) have and recover $294,974.13, plus prejudgment
interest and that Panhandle Packing and Gasket, Inc., individually and d/b/a Arrow
Bearings and Industrial Supply, Nammco Fabrication, Lubbock Gasket and Supply and
Lone Star Gasket and Supply, Inc. recover attorney's fees in the amount of $45,000 and
$10,000 and $7,000, respectively, for appeals to the Court of Appeals and the Supreme
Court of Texas. Presenting six issues, First United contends (1) it was not liable to its
corporate depositor for breach of contract by cashing checks payable to the depositor and
endorsed in blank by the depositor's bookkeeper, (2) it was not liable to its corporate
depositor for conversion by cashing checks payable to the depositor and endorsed in blank
by the depositor's bookkeeper, (3) it was not liable to its corporate depositor for negligence
in cashing 476 checks endorsed in blank by the corporate bookkeeper over an eight-year
period, (4) the trial court erred in submitting the question of damages in one broad-form
question because the appropriate statutes of limitation and the award of attorney's fees
applicable to the three theories of liability cannot be determined, (5) the trial court erred in
admitting evidence by an expert witness because his testimony was based on an unreliable
foundation, and (6) the trial court erred in denying it dollar-for-dollar credit of the amount
the depositor was paid by the bookkeeper per court-ordered restitution. We reverse and
render in part and reverse and remand in part.

 Panhandle Packing is a Texas corporation doing business as Arrow Bearings and
Industrial Supply, Nammco Fabrication, and Lubbock Gasket and Supply. Also, Lubbock
Gasket and Supply is the owner of all the stock of Lone Star, a corporation. The 
corporations are affiliated and have common stock ownership, but Lubbock Gasket acts
as the parent corporation. (2) At all times material here, Betty Kimbrell worked for Panhandle
Packing as bookkeeper for the firms that maintained business deposit accounts. By its live 
pleading, among other matters, Panhandle Packing alleged:


 As a normal part of its financial business, Lubbock Gasket would pay
and advance funds to the Internal Revenue Service and other
governmental taxing entities on behalf of itself and its other
subsidiaries or divisions to pay taxes and other items owed based on
the payroll of employees. In turn, each of these subsidiaries or
divisions would write a check payable to Lubbock Gasket, drawn on
the respective subsidiary's or division's own bank account at First
United and sometimes at other financial institutions. The checks
would be made out to Lubbock Gasket for deposit in Lubbock
Gasket's account as reimbursement for the taxes paid.


 


 The reimbursement transaction was primarily handled by one of
Lubbock Gasket's employees, Betty Kimbrell. Unknown to Plaintiffs,
Betty Kimbrell would take the reimbursement checks to First United
and instead of depositing the checks at First United and into the
account of Lubbock Gasket, as she was instructed to do, Betty
Kimbrell would obtain cash from the tellers at First United and then
use that cash to her own benefit. 


 


 Since 1993, First United allowed Betty Kimbrell to cash checks made
payable to Lubbock Gasket and endorsed by Lubbock Gasket. As a
result of . . . and due to the actions of First United, Plaintiffs have
sustained damages in the amount of $676,776.09. 



The foregoing allegations were not pled in the alternative; thus, they constitute judicial
admissions and were conclusively established in the case without the introduction of the
pleadings or presentation of other evidence. See Houston First American Sav. v. Musick,
650 S.W.2d 764, 767 (Tex. 1983). The endorsement on the checks did not contain any
restriction, i.e., "for deposit only" or otherwise. Panhandle Packing did business under its own name and under the three assumed
names. The embezzlement was not detected by Panhandle Packing, but was discovered
when First United made inquiry about the authority of a maker on a check in 2000. A review
of the records disclosed that beginning in 1993 and continuing until June 2000, the
bookkeeper endorsed approximately 476 checks in blank and kept the cash proceeds
totaling $676,776.09.

 Seeking to recover its losses caused by the bookkeeper's embezzlement, Panhandle
Packing filed suit against First United alleging breach of contract, conversion, violations of
section 4.401 of the Texas Business and Commerce Code, and negligence. In addition to
its general and specific denial that Panhandle Packing had not complied with all conditions
precedent, First United pled the affirmative defenses of estoppel, the deposit agreement and
corporate resolution, failure to satisfy conditions precedent, negligence of Panhandle
Packing, comparative negligence, laches, good faith payment, payment, and multiple
statutes of limitation. (3) Answering the 14 questions submitted, the jury found:


 the bookkeeper did not have authority to endorse the checks without
restriction;
 First United sent a statement of accounts showing payment of items for
the accounts from January 1993 through June 2000;
 Panhandle Packing gave First United notice that the endorsements in
blank were unauthorized in June 2000;
 First United failed to comply with the deposit agreement,
 First United's failure to comply with the agreement was not excused; 
 the negligence of First United and Panhandle Packing was a proximate
cause of the occurrence;
 the jury allocated 49% negligence to First United and 51% to
Panhandle Packing;
 First United failed to exercise good faith in paying cash to the
bookkeeper;
 the bookkeeper was Panhandle Packing's agent;
 First United converted Panhandle Packing's property;
 First United wrongfully exercised dominion over Panhandle Packing's
property;
 $294,974.13 compensates Panhandle Packing for damages resulting
from First United's failure to comply, its negligence, or conversion; and
 $45,000 attorney's fees for the trial court, but none for appeals. 



 First United suggests that the question for our review is whether a loss resulting from
embezzlement by an employee of a bank customer should be borne by the employer or the
bank. Because an appeals court should not decide a case on a theory different from that
on which it was pled and tried, we will consider the issue in the context of the theory on
which the case was tried in the trial court and on issues that were preserved and presented 
for our review. American Mut. Liability Ins. v. Parker, 144 Tex. 453, 191 S.W.2d 844, 848
(1945); El Paso Environ. Systems v. Filtronics, 609 S.W.2d 810, 813 (Tex.Civ.App.--El Paso
1980, writ ref'd n.r.e.). Since issues one, two, and three present no evidence challenges
before we commence our analysis, we first identify the appropriate standard of review when,
as here, First United did not have the burden of proof at trial. 

Standard of Review


 In reviewing a no evidence contention, we consider only the evidence that tends to
support the findings and disregard all evidence to the contrary. Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965); Stedman v. Georgetown S. & L. Ass'n, 595 S.W.2d 486, 488 (Tex.
1979). When evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence
and will not support a judgment. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752,
755 (Tex. 1970). We consider only the evidence and inferences which can be drawn
therefrom in the light most favorable to the jury's findings and disregard all contrary evidence
and inferences. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993); Williams
v. Gaines, 943 S.W.2d 185, 190 (Tex.App.--Amarillo 1997, writ denied). In addition, the trial
court instructed the jury as follows:

 A fact may be established by direct evidence or by circumstantial evidence or
both. A fact is established by direct evidence when proved by documentary
evidence or by witnesses who saw the act done or hear the words spoken. 
A fact is established by circumstantial evidence when it may be fairly and
reasonably inferred from other facts proved. 


 The mere fact that an incident happened, standing alone, does not permit the
jury to draw the inference that the incident was caused by anyone's
negligence. 


 Citing Dow Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001), First United
contends that if its evidentiary challenges are sustained, we should proceed to examine the
record to determine if the contrary proposition is established as a matter of law. However,
the rule discussed in Dow Chemical does not apply here because First United did not have
the burden of proof on the issues we will discuss. 

 Conversion


 Addressing First United's issues in a logical rather than sequential order, we begin
with issue two, by which it contends the evidence conclusively established it did not convert
any instrument or engage in common law conversion as a matter of law. As suggested by
its argument and presented by its motion for directed verdict, objections at the charge
conference, and motion for judgment notwithstanding the verdict, we consider the issue as
a no evidence challenge to the jury's answers to questions 11 and 12 by which it found that
First United converted the checks. See Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d
826, 836 (Tex.App.--Amarillo 1993, writ denied). Because both parties are corporations, we
first focus on the following instruction given by the trial court:

 [w]hen a corporation is involved, of course, it may act only through natural
persons as its agents or employees; and, in general, any agent or employee
of a corporation may bind the corporation by his acts and declarations made
while acting within the scope of his authority delegated to him by the
corporation, or within the scope of his duties as an employee of the
corporation.


 Panhandle Packing does not challenge the jury's finding to question 10 that the
bookkeeper was Panhandle Packing's agent. Additionally, Panhandle Packing
acknowledges the bookkeeper's agency status in its brief. Because it is undisputed that
First United paid the face amount of the checks to the bookkeeper as agent upon her
presentment, the law of principal and agent is applicable. In Shaw v. Kennedy, Ltd., 879
S.W.2d 240, 245 (Tex.App.--Amarillo 1994, no writ), we recognized the rule that what a
principal does through an agent, he does himself. In Pfluger v. Colquitt, 620 S.W.2d 739,
743 (Tex.Civ.App.--Dallas 1981, writ ref'd n.r.e.), a conversion case, the court held that
where the jury found that a third party was acting as the seller's agent, "the transaction had
the same effect as if Pfluger had dealt personally with Colquitt because one who acts
through a duly authorized agent is bound as if he had acted in person. See also Cash v.
Lebowitz, 734 S.W.2d 396, 399 (Tex.App.--Dallas 1987, writ ref'd n.r.e.) (holding that
payment to an agent had the same effect as payment directly to the principal and the
agent's subsequent conversion of the money did not defeat the rights of the person making
payment). These decisions conform to the court's instruction regarding corporate agents. 

 In the context of the definitions of conversion in question 11, (4) according to the judicial
admissions, the bookkeeper was the person charged with the task of preparing checks and
conducting necessary banking business to accomplish reimbursement to Lubbock Gasket
and when checks were presented to First United, they were "endorsed by Lubbock Gasket." 
By question 12, the jury was asked whether First United wrongfully assumed and exercised
dominion over Panhandle Packing's property. Applying the appropriate standard of review
to the evidence which includes the judicial admission that the checks were "endorsed by
Lubbock Gasket," we conclude there is no evidence to show the checks were paid on
unauthorized endorsements or that payment was made to a person not entitled to endorse
the instruments. Regarding question 12, we conclude there is no evidence to support the
jury's findings that First United wrongfully assumed and exercised dominion over the checks. 
Issue two is sustained.

Contract 
 

 By its first issue, First United contends the bookkeeper had authority to endorse the
checks and it had no contractual liability as a matter of law. As suggested by the argument,
we also consider this a no evidence challenge to the jury's answers to questions 1, 5, and
9, by which it found the bookkeeper did not have authority to endorse the checks as she did,
First United failed to comply with its agreements with Panhandle Packing, and First United
failed to exercise good faith in cashing the checks. 

 Authority of Bookkeeper. (Question 1). Among other things, the chief financial
officer, and also director, officer, and principal shareholder of Panhandle Packing testified
regarding the bookkeeper's authority to endorse checks without any restrictive endorsement. 
According to his testimony, when he discovered that the bookkeeper was endorsing checks
without any restrictive provision, he instructed her to discontinue the practice. Considering
this evidence in the light most favorable to the jury's finding and disregarding all evidence
to the contrary, it constitutes some evidence of the absence of authority to endorse the
checks without a restrictive endorsement, i.e., "for deposit only."

 Good Faith. (Questions 5 and 9). By its answer to question 5, the jury found that
First United failed to comply with the deposit agreement. As part of question 5, the jury was
instructed as follows:

 Every agreement between the parties or duty arising out of the agreement
imposes an obligation of good faith in its performance or enforcement.


 For checks presented . . . prior to January 1, 1996, "good faith" means
honesty in fact in the conduct or transaction concerned.

 

 For checks presented . . . after January 1, 1996, "good faith" means honesty
in fact and the observance of reasonable commercial standards of fair
dealing. 


By its answer to question 9, which included similar instructions, the jury found that First
United failed to exercise good faith in paying cash to the bookkeeper. Among other
evidence, Panhandle Packing introduced First United's multi-page document entitled "Teller
Performance Standards" which was admitted after counsel announced he had no objection. 
An employee of First United testified to the performance standards and described her
training. She and another employee testified that the practice of paying cash to the
bookkeeper was contrary to the standards. 

 In Riley v. First State Bank, 469 S.W.2d 813, 816 (Tex.Civ.App.-Amarillo 1971, writ
ref'd n.r.e.), we held that the test of good faith is not diligence or negligence. Similar issues
were considered in Texas Stadium Corporation v. Savings of America, 933 S.W.2d 616
(Tex.App.--Dallas 1996, writ denied). In affirming a summary judgment, the court concluded
that the fact that some of the bank employees had acknowledged that endorsements on the
checks did not comply with internal policies did not, standing alone, raise a fact issue on
good faith. Id. at 619-20. However, according to the summary judgment evidence, the bank
employees had no knowledge of the embezzlement. In addition, the court held that even
though acceptance of the checks may have constituted negligence, any negligence did not
constitute bad faith and concluded the bank acted in good faith unless it had knowledge of
the embezzlement. Here, however, First United announced it had no objection to admission
of the teller performance standards into evidence and did not request a limiting instruction. 
Accordingly, the standards were before the jury for all purposes. Tex. R. Evid. 105(a);
Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 365 (Tex. 1987); See also Cigna
Ins. Co. of Texas v. Evans, 847 S.W.2d 417, 421 (Tex.App.--Texarkanna 1993, no writ)
(holding that in the absence of any directive to the fact finder to consider a piece of evidence
only for a limited purpose, it may consider it for any and all purposes.) Notwithstanding
Riley and Texas Stadium, because First United did not request that the teller performance
standards be admitted for a limited purpose or that an appropriate instruction be given to the
jury, the evidence was before the jury for all purposes. Based on this record, we conclude
the teller performance standards and the testimony of the bank employees constituted some
evidence of the absence of good faith. Issue one is overruled.

Global Damage Question 


 By its fourth issue, First United contends the faulty submission of the global damage
question prevented it from asserting its defenses that, alternatively, deny recovery to
Panhandle Packing as a matter of law. We agree. By question 13, the jury was asked:

 [w]hat sum of money, if now paid in cash, would fairly and reasonably
compensate Panhandle Packing and Gasket, Inc., for its damages, if any, that
resulted from either First United Bank's failure to comply with the Deposit
Agreement, if any, First United Bank's negligence, if any, or First United
Bank's conversion, if any. 


 Do not add any amount for interest, if damages, if any.


 Answer in dollars and cents, if any.


 Answer: $ 294,974.13 


At the charge conference, counsel for First United objected as follows:


 it is an improper submission as to global damages as to each cause of
action;
 there is no evidence, or there is insufficient evidence and an inability
for the jury to determine the amount of damages for each claim
separately; and



 each cause of action should have its own damage claim.


 

After overruling the objections, the court submitted the charge to the jury.

 

 In Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388-89 (Tex. 2000), the Court
disapproved of the global damage issue which submitted multiple theories of recovery. After
discussing a single broad-form damage question which commingled invalid theories of
liability with valid theories, the Court held the error was harmful because it could not be
determined whether the improperly submitted theories formed the sole basis for the jury's
finding.

 Here, having held there was no evidence to support the submission of the 
conversion ground, the rule announced in Crown Life is controlling. See also Iron Mt. Bison
Ranch v. Easley Trailer Mfg., 42 S.W.3d 149, 156 (Tex.App.--Amarillo 2000, no pet). 
Moreover, the prejudice and harm resulting from submission of multiple theories in one
question is magnified because application of the statute of limitations to a given factual
situation is a question of law, See Musgrave v. Brookhaven Lake Owners, 990 S.W.2d 386,
397 (Tex.App.--Texarkana 1999, pet. denied). The applicable statutes of limitation to the 
three distinct theories of recovery cannot be determined. Although First United pled various
statutes of limitation, because of the global submission of multiple theories, the court was
unable to apply the appropriate limitations statute. (5) Issue four is sustained.

Negligence 


 By it's third issue, First United contends the evidence established it was not negligent
in cashing the checks. By its answer to question 8, the jury found Panhandle Packing 51
percent negligent. Accordingly, it may not recover damages if its percentage of
responsibility is more than 50 percent. Tex. Bus. & Com. Code Ann. §§ 33.001 & 33.002(a)
(Vernon 2002). Further, by its motion for judgment, Panhandle Packing did not seek
judgment based on negligence. Considering our disposition of the case and the jury's
finding that Panhandle Packing's responsibility was greater than 50%, it is unnecessary to
address this issue. We do not have authority to render advisory opinions. Firemen's Ins.
Co of Newark, New Jersey v. Burch, 442 S.W.2d 331, 333 (Tex. 1968); See also Tex.
Const. art. V, § 8.

 Our disposition of First United's second and fourth issues pretermits consideration
of the remaining issues. Having held there was no evidence to support the jury's finding of
conversion and that submission of the damage question on three theories of recovery was
harmful error, but having overruled First United's no evidence challenge on the contract
claim, we reverse and render in part and reverse and remand in part. 

 Accordingly, the judgment of the trial court is reversed and judgment is hereby
rendered that Panhandle Packing and Gasket, Inc. take nothing against First United Bank
of Dimmitt on its statutory and common law conversion claims and negligence claim; that
portion of the trial court's judgment regarding Panhandle Packing's contract claim on its
deposit agreement is reversed and the cause is remanded for further proceedings.

 Don H. Reavis

 Justice



Johnson, C.J., not participating.

1. Because the judgment makes the award of $294,974.13 to Panhandle Packing, to
avoid confusion, we will refer to plaintiff/appellee as Panhandle Packing except as
otherwise necessary. 
2. According to the judgment, Panhandle Packing and Gasket, Inc. is to recover
$361,565.55 including interest from First United, but Panhandle Packing and Gasket, Inc.,
individually and d/b/a Arrow Bearings and Industrial Supply, Nammco Fabrication, Lubbock
Gasket and Supply, and Lone Star Gasket and Supply are to recover only the attorney's
fees awarded. Notwithstanding the unexplained variation, for purposes of our analysis, 
the precise legal relationship among appellees is not controlling.
3. By five special exceptions, First United asserted (1) the allegation of conversion 
failed to allege sufficient facts, (2) the petition did not state a specific amount of damages
being sought, (3) the petition failed to identify the contract allegedly breached, (4) failure
to satisfy conditions precedent, and (5) failure to plead sufficient facts regarding the bad
faith claim. Because the record does not show that the exceptions were brought to the
attention of the trial court, they present nothing for our review. See Tex. R. Civ. P. 90.
4. "Convert" for check presented by Betty Kimbrell prior to January 1, 1996, means
an instrument is paid on an unauthorized indorsement. Then "convert" for checks
presented after January 1, 1996, means a bank makes or obtains payment with respect to
an instrument for a person not entitled to enforce the instrument.
5. By it's motion for judgment, Panhandle Packing alleged that contract damages
based on a four-year statute of limitations would be $333,435.14; based on a three-year
statute would be $198,675.32 per section 3.118 of the Business and Commerce Code; and
based on a two-year statute would be $107,683.83 per section 16.003 of the Texas Civil
Practice and Remedies Code.