NO. 07-05-0426-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 6, 2007
_____

PANHANDLE PACKING AND GASKET, INC.,
Individually and d/b/a ARROW BEARINGS & INDUSTRIAL SUPPLY,
and NAMMCO FABRICATION, and LUBBOCK GASKET & SUPPLY,
and LONE STAR GASKET & SUPPLY, INC.,

Appellants

v.

FIRST UNITED BANK, Individually and as Successor to
SHADOW HILLS NATIONAL BANK,

Appellee
_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,275; HON. J. BLAIR CHERRY, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Panhandle Packing and Gasket, Inc., individually and d/b/a Arrow Bearings & Industrial Supply, Nammco Fabrication, Lubbock Gasket & Supply, and Lone Star Gasket & Supply, Inc. (hereinafter collectively referred to as Lubbock Gasket) appeal from a summary judgment granted in favor of First United Bank, individually and as successor to

Shadow Hills National Bank (hereinafter referred to as First United). Lubbock Gasket also appeals from the trial court's decision to deny its motion for summary judgment upon its breach of contract claim against First United. We affirm the trial court's order.

*Prologue*

This appeal is the second chapter in the embezzlement case involving an employee of Lubbock Gasket, namely Betty Ann Ebbs Kimbrell. *See First United Bank v. Panhandle & Gasket, Inc.,* 190 S.W.3d 10 (Tex. App.–Amarillo 2005, no pet.)*.* During her tenure with Lubbock Gasket, Kimbrell would endorse and cash checks which were made payable to Lubbock Gasket. The checks in question were payroll reimbursement checks written to Lubbock Gasket by subsidiaries of the company. The record discloses that Lubbock Gasket would satisfy the IRS payroll tax obligations of its subsidiaries and then seek reimbursement from them for the amounts paid. And, though the subsidiaries had their own bank accounts, the treasurer and chief financial officer of Lubbock Gasket or another signatory of that company would be the one to execute the reimbursement checks on behalf of the subsidiaries.

Evidence further depicted that the same chief financial officer not only had authority to draft on each account but also received and reviewed the monthly bank statements and cancelled checks of both Lubbock Gasket and its subsidiaries. After perusing them, he would forward the documents to Kimbrell. Though he personally made no effort to compare and reconcile the bank statements and checks of the various companies, he nonetheless conceded that if he had, he would have discovered Kimbrell's misdeeds. Forwarding the entities' bank statements to an accountant also would have disclosed the malfeasance, according to Lubbock Gasket's treasurer.

2

Eventually, Lubbock Gasket discovered Kimbrell's scheme, and fired her. Thereafter, she and First United were sued by the company to recover the monies taken.

*Considering Entire Case and Failure to Grant Lubbock Gasket's*
*Motion for Summary Judgment*

We initially address the first and third points of error given their interdependence. Through the former, Lubbock Gasket contends that the trial court erred in considering both the elements of liability and damages on remand *viz* its claim of breached contract. This is purportedly so because we had resolved the matter of liability (or breach) in the first appeal and remanded solely to have the trial court consider damages. Concerning the latter element, Lubbock Gasket asserts through its third issue that it showed itself entitled to judgment since it established how much damages it suffered via its motion for summary judgment. Yet, we note that its motion did not address the topic of breach. This may be so since it believed that we had settled the issue of breach during the first appeal, and having allegedly resolved that element, it apparently believed that it need not have addressed the matter again. We overrule both issues.

As a result of the prior appeal, we reversed and rendered that portion of the trial court's judgment imposing liability on First United for its alleged conversion of property and negligence. *First United Bank v. Panhandle Packing & Gasket, Inc.,* 190 S.W.3d at 19-20. However, that portion of the judgment "regarding Panhandle Packing's contract claim on its deposit agreement [was] reversed and the cause [was] remanded for further proceedings." *Id.* at 20. As can be seen, in remanding the proceeding we provided the trial court with no specific instructions. When that occurs, the issue or cause of action

3

remanded stands as if it had never been tried. *In re Estate of Chavana*, 993 S.W.2d 311, 315 (Tex. App.–San Antonio 1999, no pet.) (stating that when the appeal is reversed and remanded without instructions, then the matter stands as if it has never been tried); *Hallmark v. Hand*, 885 S.W.2d 471, 475-76 (Tex. App.–El Paso 1994, writ denied) (stating the same). So, because the claim of breached contract had to be treated as if it had not been tried, not only was the trial court obligated to address both the elements of liability and damages but also Lubbock Gasket was required to address both in its summary judgment motion before the trial court could even consider whether to grant a summary judgment against First United. *See* TEX. R. CIV. P. 166a(c) (stating that the movant must establish its entitlement to judgment on the issues "expressly set out in the motion"); *Cook-Pizzi v. Van Waters & Rogers, Inc.,* 94 S.W.3d 636, 643 (Tex. App.–Amarillo 2002, pet. denied) (stating that the grounds on which the movant relies for summary judgment must be stated in the motion).

*Summary Judgment for First United*

Next, we turn to the second and final issue pending for review. It concerns whether the trial court erred in granting First United's motion for summary judgment. We conclude that it did not and overrule the issue.

First United sought summary judgment on several grounds, one of which implicated §4.406(f) of the Texas Business and Commerce Code and the doctrine of waiver.[1] Section 4.406(f) states that:

---

[1]Because several grounds were mentioned in First United's motion for summary judgment and the trial court did not specify upon which ground it relied in granting the motion, it is encumbent upon Lubbock Gasket to establish on appeal that none supported the decision. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

TEX. BUS. & COM. CODE ANN. §4.406(f) (Vernon 2002). Statute permits the parties to modify this provision and other portions of Chapter 4 of the Business and Commerce Code, in certain respects, and the parties apparently did so here and included the changes in their depository agreement. *See id.* §4.103 (stating that "the effect of the provisions of [chapter 4 of the Code] may be varied by agreement, but the parties . . . cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care . . . ."). Though debate exists between the parties regarding which of two depository agreements admitted into evidence controlled the outcome here, both nevertheless contain language imposing upon the account owner (or Lubbock Gasket) a duty to report to First United certain discrepancies or problems concerning its account. For instance, that which First United deems controlling stated that Lubbock Gasket was to "carefully examine [its] statement and report any errors, unauthorized withdrawals or transfers, forgeries, or alterations . . . within 60 days of when the statement [was] first made available [and if] no report is made . . . within such time, [it] waive[d] [its] right to contest any withdrawals or transfers so disclosed . . . ." In turn, the contract that Lubbock Gasket considers binding stated that the customer was to "carefully examine [the] statement and report any errors, forgeries, or alterations to [the bank] as soon as possible, but, in no event, later than 60 days after the statement is made available. . . ; if no report is made . . . within such time, [it] waive[d] [its] right to contest the payment of any items so disclosed . . . ." As can be seen by comparing the two provisions, both encompass the reporting of "errors." So too do both effectively result in the

5

loss of any claim by the customer arising from the "errors" should those "errors" go unreported within the prescribed time. And, in comparing these provisions to the allegations and pivotal facts at issue, we cannot but hold that the circumstances before us fall within the penumbra of those agreements.

Lubbock Gasket complains of its bookkeeper omitting a restrictive endorsement, *i.e.,* "for deposit only," from the back of various checks, then presenting to First United those checks for payment, and converting the cash proceeds received from First United. Assuming *arguendo* that the bookkeeper was not authorized to so endorse the checks, the undisputed evidence illustrates that Lubbock Gasket knew that she omitted the restrictive phrase from the endorsement on various of the checks in question. Indeed, Lubbock Gasket's treasurer and chief financial officer discovered the omission while perusing company bank statements. He then spoke with Kimbrell, was told by her that it involved "only four or five checks a . . . month," said nothing to First United about the purportedly defective endorsement, and decided not to worry "about it." This same officer also testified that the missing deposits and machinations of Kimbrell could have been discovered had the bank statements and checks of the several accounts over which he exercised control been reconciled and compared.

Next, and also assuming *arguendo* that First United was obligated to know of the deficient endorsements (even though Lubbock Gasket's chief financial officer opted not to worry about them or inform First United), one cannot reasonably dispute that cashing the checks instead of complying with an unmentioned restrictive endorsement constituted an "error" on the part of First United. Moreover, and as previously mentioned, these missing deposits were susceptible to discovery through reconciliation of the bank statements. Given

6

this, Lubbock Gasket was obliged to report the "errors" within the time prescribed in the deposit agreements, and it does not dispute on appeal whether it did so.[2] See *Willis v. Willoughby,* 202 S.W.3d 450, 452 (Tex. App.–Amarillo 2000, pet. denied) (stating that the appellant had the burden to negate on appeal each potential ground for summary judgment).

In sum, Lubbock Gasket did not negate the validity of each ground upon which summary judgment could have been founded. Since it did not, we affirm the decree. We further restrict our holding to the specific facts involved in this case. No opinion is voiced upon situations wherein the bank customer lacked access to and control over all the bank statements and checks which would have disclosed the error.


                                            Brian Quinn
                                            Chief Justice

---

[2]To the extent that Lubbock Gasket cites §4.406(e) of the Business and Commerce Code as basis for arguing that First United was barred from claiming waiver because it acted in bad faith, we note that §4.406(e) alludes to preclusion asserted under §4.406(d). First United, however, invoked preclusion under §4.406(f), as modified by the deposit agreement. So, §4.406(e) does not apply.