Petition for Writ of Mandamus Denied, and Opinion filed December 11,
2008








 

Petition
for Writ of Mandamus Denied, and Opinion filed December 11, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00819-CV

____________

 

IN RE CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL,
L.L.C.

and CREDIT SUISSE FIRST BOSTON, L.L.C., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

On June
17, 2008, we declined to issue mandamus relief compelling the respondent[1]
to extend a contractual jury waiver to a nonsignatory.  Relators now urge us to
extend the jury waiver to the nonsignatory on the basis of agency principles,
an argument not before us in the earlier mandamus proceeding.  We hold that a
valid contractual jury waiver may be invoked by the agents of a signatory
party.  However, we decline to extend a jury waiver to a nonsignatory that is
merely alleged to be the signatory=s agent.  Therefore, we deny the
petition for writ of mandamus.








                                                               BACKGROUND

Relators
consist of Credit Suisse First Boston Mortgage Capital, L.L.C. (AMortgage Capital@) and Credit Suisse First Boston,
L.L.C. (ACSFB@).  Both relators have been sued for
fraud by the real party in interest, 1001 McKinney Ltd. (the ADeveloper@), a real-estate development
partnership that planned to renovate a Houston office building.  Developer and
Mortgage Capital, but not CSFB, signed a Loan Agreement in which Developer was
to receive a loan in excess of $39 million to fund the renovation.  After the
Loan Agreement was signed, however, a redesign of the renovation project forced
Developer to seek additional financing.  Allegedly, two CSFB employees
fraudulently promised Developer that Mortgage Capital would lend an additional
$6.75 million on the same terms as the original loan.  Developer alleges that
the CSFB employees were authorized to act on behalf of Mortgage Capital, and
further claims that CSFB=s promise Aeffectively committed@ Mortgage Capital to the new loan. 
After relators declined to loan additional money, Developer sued CSFB and
Mortgage Capital for common-law fraud.[2]








Relators
moved to quash Developer=s jury demand, citing a clause in the Loan Agreement in which
the parties to the contract waived their right to submit disputes to a jury. 
Developer responded that, although Mortgage Capital signed the Loan Agreement,
CSFB did not; therefore, Developer contended, its claims against CSFB are not
subject to the jury-waiver clause.  The trial court agreed with Developer and
quashed the jury demand as to contract-signatory Mortgage Capital, but not as
to nonsignatory CSFB.  The court ruled that a single trial will take place, in
which Developer=s fraud claims against CSFB may be tried to a jury, but its
claims against Mortgage Capital will be submitted to the bench.  We denied
relators= subsequent mandamus petition.  See
In re Credit Suisse First Boston Mortgage Capital, 257 S.W.3d 486 (Tex.
App.CHouston [14th Dist.] 2008, orig.
proceeding).  However, we declined to consider one of relators= arguments which was premised on the
application of agency principles, because relators had not raised that
contention in the trial court.  See id. at 493.

Relators
then presented their agency argument to the trial court in a motion for
reconsideration, which was denied.  This second mandamus proceeding followed. 
Relators contend that, because Developer has alleged an agency relationship
between CSFB and Mortgage Capital, the trial court abused its discretion by
refusing to enforce the jury waiver as to Developer=s fraud claims against CSFB.

                                                       STANDARD
OF REVIEW

Mandamus
relief is available when the relator establishes a clear abuse of discretion
for which there is no adequate appellate remedy.  See In re Prudential Ins.
Co. of Am., 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).  A trial
court clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to constitute a clear and prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  With
respect to the resolution of fact issues, we will not substitute our judgment
for the trial court=s.  See id.  Therefore, the relator must establish the
trial court reasonably could have reached only one decision.  See id. at
840.  On the other hand, a trial court has no discretion in determining what
the law is or applying the law to the facts; therefore, a clear failure by the
trial court to analyze or apply the law correctly constitutes an abuse of
discretion, even in an unsettled area of law.  See id.; Huie v.
DeShazo, 922 S.W.2d 920, 927B28 (Tex. 1996) (orig. proceeding). 
Whether a party has contractually waived its right to a jury trial is a
question of law that we review de novo.  See Prudential Ins. Co.,
148 S.W.3d at 135; In re Wells Fargo Bank Minn. N.A., 115 S.W.3d 600,
605 (Tex. App.CHouston [14th Dist.] 2003, orig. proceeding [mand. denied]).








                                EXTENSION
THROUGH AGENCY PRINCIPLES

We are
asked to decide, as a matter of first impression, whether a valid contractual
jury waiver applies to nonsignatories seeking to invoke the waiver as agents of
the signatory corporation.  We conclude that a valid waiver provision may be
invoked by a nonsignatory agent when it acts on behalf of the signatory
corporation.

In 2007,
the Texas Supreme Court adopted a similar rule in the context of arbitration
provisions.  In re Kaplan Higher Educ. Corp., 235 S.W.3d 206, 209 (Tex.
2007) (orig. proceeding).  Kaplan involved a fraudulent-inducement
lawsuit brought by forty-five students against a college, its corporate parent,
its president, and its admissions director.  See id. at 208.  The
students= enrollment agreement, which was
signed by the students, the college, and the president, required the
arbitration of any disputes arising therefrom.  See id.  However, the
corporate parent and the admissions director were not signatories to the
agreement.  See id.  After the defendants pressed for arbitration, the
studentsChoping to avoid arbitrationCdismissed their claims against the
two signatories, leaving only their claims against the two nonsignatories.  See
id.  Nevertheless, the Supreme Court permitted the two nonsignatories to
invoke the arbitration agreement, as agents of the signatories.  See id.
at 209.  The court reasoned that most contract claims against a corporation
could be recast as fraudulent-inducement or tortious-interference claims
against the agents or employees who took part in negotiating the contract.  See
id.  However, it would be impractical to require all of the corporation=s agents to sign, or be listed in,
every contract executed by the corporation.  See id.  To prevent parties
(e.g., the students) from avoiding unfavorable clauses (e.g.,
mandatory arbitration) by suing only the other party=s agents, the Supreme Court held that
Athe agents of a signatory may
sometimes invoke an arbitration clause even if they themselves are nonsignatories
and a claimant is not suing on the contract.@  Id.  However, the rule
applies only to agents acting on behalf of the signatory corporation:








We emphasize again today that arbitration clauses do not automatically
cover all corporate agents or affiliates.  Like other contracts, arbitration
agreements Aare enforced according to their terms and according to
the intentions of the parties.@  Thus, for
example, owners may not be able to invoke a subsidiary=s arbitration clause when they act on their own behalf
rather than for their subsidiary.  But when an agreement between two parties
clearly provides for the substance of a dispute to be arbitrated, one cannot
avoid it by simply pleading that a nonsignatory agent or affiliate was pulling
the strings.

 

Id. at 210 (citations omitted).  

Relators
urge us to analogize jury waiver provisions to arbitration clauses, thereby
extending the Kaplan holding to the case before us.  That a rule may be
applied in arbitration clauses, however, does not necessarily render it
appropriate for jury waivers.  See Credit Suisse, 257 S.W.3d at 491B92.  Arbitration agreements and jury
waivers are subject to opposite presumptions:

Unlike
arbitration agreements, which are strongly favored under Texas law, the right
to a jury trial is so strongly favored that contractual jury waivers are
strictly construed and will not be lightly inferred or extended.  Before a jury
waiver will be enforced, such waiver must be found to be a voluntary, knowing,
and intelligent act that was done with sufficient awareness of the relevant
circumstances and likely consequences.

 








Id. at 490 (citations omitted).  A
handful of federal courts have extended a jury waiver to a nonsignatory through
agency principles, but they based their reasoning on principles unrelated to
relators= proposed analogy between arbitration
clauses and jury waivers.  See Tracinda Corp. v. DaimlerChrysler AG, 502
F.3d 212, 224B25 (3d Cir. 2007); Mowbray v. Zumot, 536 F. Supp. 2d 617, 623 (D.
Md. 2008).  Those courts explained that, because a corporation can act only
through its agents and employees, by definition, one who agrees to a
jury-waiver clause knowsCand intendsCthat the clause naturally must extend to the corporation=s nonsignatory agents, too.  See
Tracinda, 502 F.3d at 223B25; see also In re Merrill Lynch Trust Co. FSB, 235
S.W.3d 185, 189 (Tex. 2007) (orig. proceeding) (A[C]ontracting parties [that] agree to
arbitrate all disputes >under or with respect to= a contract . . . generally intend to
include disputes about their agents= actions because >[a]s a general rule, the actions of a
corporate agent on behalf of the corporation are deemed the corporation=s acts.=@).  Thus, extension-through-agency
does not run afoul of the requirement that jury waivers be knowingly and
voluntarily made.  See Brady v. United States, 397 U.S. 742, 748 (1970),
quoted in Prudential Ins. Co., 148 S.W.3d at 132.

Accordingly,
we hold that, when a valid contractual jury waiver applies to a signatory
corporation, the waiver also extends to nonsignatories that seek to invoke the
waiver as agents of the corporation.  See Tracinda, 502 F.3d at 225; Kaplan,
235 S.W.3d at 209.

                                                  ALLEGATIONS
OF AGENCY

Despite
Developer=s prodding, relators have not elucidated the legal relationship between
CSFB and Mortgage Capital, which relators describe simply as Aaffiliates.@  See Credit Suisse, 257
S.W.3d at 493 n.7.  Despite the absence of a stipulation or proof establishing
an agency relationship, relators contend CSFB may invoke the jury waiver simply
because Developer alleges that CSFB acted as the agent of signatory
Mortgage Capital.  Developer responds that it has not alleged an agency
relationship between CSFB and Mortgage Capital.








In
deciding whether Developer has alleged an agency relationship between CSFB and
Mortgage Capital, we subject its pleadings to a de novo review.  See,
e.g., In re C.S., 264 S.W.3d 864, 873 n.6 (Tex. App.CWaco 2008, no pet.) (employing de
novo review to decide whether pleadings state cognizable cause of action); Boales
v. Brighton Builders, Inc., 29 S.W.3d 159, 163 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied) (reviewing pleadings de novo to address dismissal upon special
exceptions); see also Turner v. Zellers, 232 S.W.3d 414, 418 (Tex. App.CDallas 2007, no pet.) (A[T]he trial court is in no better
position than the appellate court to determine the application of the law to
the . . . pleadings.@).

Developer=s allegations, which we summarize
below, are contained in its Fourth Amended Original Petition and its disclosure
responses.  See Tex. R. Civ. P. 194.2(c) (requiring a party to state its
legal theories and the general factual basis for its contentions).  Developer
has alleged that CSFB originated commercial mortgage loans and used Mortgage
Capital as the funding entity for those loans.  Accordingly, the negotiations
for the building renovation loan were handled by CSFB, through its authorized
employees.  In negotiating the terms of the loan to be funded by Mortgage
Capital, these CSFB employees were Aauthorized to act on behalf of@ Mortgage Capital.  Following the
building redesign, Developer negotiated with CSFB=s employees regarding additional
financing on the same terms as the original loan, and the Aagreement of CSFB LLC to make the
promised new loan effectively committed CSFB Mortgage Capital to make the
promised loan[.]@

We
conclude that Developer has asserted an agency relationship between CSFB and
Mortgage Capital.  An Aagent@ is one who is authorized to transact business, or manage
some affair, for the principal entity.  See Coleman v. Klockner & Co. AG,
180 S.W.3d 577, 588 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  Developer has alleged
that CSFB, by and through its employees, was authorized to negotiate the terms
under which the signatory, Mortgage Capital, was to loan money.








Developer
contends that its pleadings do not set forth an agency relationship between
CSFB and Mortgage Capital but, rather, between these corporate entities and the
two CSFB employees charged with negotiating the financing deals.  However, we
see no appreciable distinction between these two scenarios.  Developer admits
that its fraud claims against both relators stem from the same factual
allegations: AThe agents in this case are the two employees who uttered the fraudulent
statements, and they acted on behalf of corporations that are held vicariously
liable for their torts.@  It is well-settled that corporations can act only through
its agents and employees.  See GTE Sw., Inc. v. Bruce, 998 S.W.2d 605,
618 (Tex. 1999); Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 391
(Tex. 1997).  Thus, the actions taken by certain agents of a corporation
sometimes may be deemed to be the acts of the corporation itself.  See GTE
Sw., Inc., 998 S.W.2d at 618; First United Bank v. Panhandle Packing
& Gasket, Inc., 190 S.W.3d 10, 15 (Tex. App.CAmarillo 2005, no pet.) (A[W]hat a principal does through an
agent, he does himself.@).  In addition, many business-related torts may be brought
against either the corporation or its employees.  See Merrill Lynch, 235
S.W.3d at 188.  Not surprisingly, then, the law is replete with examples of
corporations that act as agents for others.  See id. at 194 n.40 (citing
nonsignatory business entities acting as agents for signatory corporations); see
also Tractebel Energy Mktg., Inc. v. E.I. DuPont de Nemours & Co., 118
S.W.3d 60, 72 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (A[C]learly, a parent corporation could
agree to serve for some purposes as an agent of one of its lowly subsidiaries.@).  Many cases recognize that, in
acting as another=s agent, the corporation must of necessity have acted through
individual employees, as CSFB is alleged to have done here.  See, e.g.,
Merrill Lynch, 235 S.W.3d at 188B89.  If the corporation truly acts as
another=s agent, however, the mere recasting
of its acts as those of its employees does not change the corporation=s status as agent.  Therefore, we
hold a plaintiff may not avoid a valid jury waiver simply by suing the
nonsignatory corporation vicariously for the acts of its agent employee, if the
employee as agent could invoke the waiver clause as an agent of the contract
signatory.  See Merrill Lynch, 235 S.W.3d at 188B89 (AIf a plaintiff=s choice between suing the
corporation or suing the employees determines whether an arbitration agreement
is binding, then such agreements have been rendered illusory on one side.@).








In any
event, Developer asserted a direct theory of agency between the two
corporations themselves: AThe agreement of CSFB LLC to make the promised loan
effectively committed CSFB Mortgage Capital to make the promised loan, if
necessary.@  This allegation presupposes CSFB=s actual or apparent authority, as
an agent, to bind the alleged principal, Mortgage Capital.  See Ames v.
Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984); Grace Cmty. Church v.
Gonzales, 853 S.W.2d 678, 680 (Tex. App.CHouston [14th Dist.] 1993, no writ).

We
conclude that Developer has alleged that CSFB, the nonsignatory corporation,
acted as the agent of the signatory, Mortgage Capital.[3]


                                            ALLEGATIONS
ARE NOT ENOUGH

However,
we further hold that a nonsignatory may not invoke a jury waiver merely because
it is alleged to be an agent of the signatory.  We have found no
controlling authority for relators= proposition that a nonsignatory may
invoke a contractual jury waiver under such circumstances.  Neither Kaplan
nor Prizker v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 7 F.3d
1110 (3d Cir. 1993), provides clear support for relators= contention.  In Kaplan, the
Texas Supreme Court parenthetically discussed the plaintiff=s pleadings but also noted that the Aundisputed facts@ demonstrated an agency
relationship.  See Kaplan, 235 S.W.3d at 210.  Thus, Kaplan
cannot be read as holding that allegations alone warrant extension of a
jury-waiver clause to contract nonsignatories.  See id.  In Pritzker,
the plaintiff=s allegations were not the sole basis for the court=s holding in that some sort of
corporate agency was demonstrated by evidence in the record.  See Prizker,
7 F.3d at 1122.  Thus, neither Kaplan nor Prizker presents with a
fact pattern like that involved in this case, in which a plaintiff=s agency allegations are
unaccompanied by any supporting evidence.[4]








Federal
courts extending arbitration provisions to nonsignatories have relied on
evidence demonstrating an agency relationship with the contract signatory.  See,
e.g., Astra Oil Co. v. Rover Navigation, Ltd., 344 F.3d 276, 280 (2d Cir.
2003); Smith/Enron Cogeneration Ltd. P=ship, Inc. v. Smith Cogeneration Int=l, Inc., 198 F.3d 88, 97 (2d Cir. 1999), cert.
denied, 531 U.S. 815 (2000).  At least one of those courts has tackled a
similar, but not identical, scenario in which a nonsignatory attempted to
invoke an arbitration clause solely on the basis of the plaintiff=s alter-ego allegations.  See
McCarthy v. Azure, 22 F.3d 351 (1st Cir. 1994).  The court rejected the
argument and offered the following observation:

We note that, although plaintiff has alleged that appellant is the
alter ego of [the signatory], appellant has never admitted the truth of the
allegation.  While not necessary to our decision, we are impelled to remark
the obvious:  it would be strange if an equitable doctrine could be construed
to allow a party, on one hand, to resist the characterization that he is a
corporation=s alter ego, and, on the second hand, to allow him
simultaneously to use that characterization as a device to sidetrack the
characterizer=s suit.

 

Id. at 363 n.17 (emphasis added). 
Similarly, we conclude that one who does not admit to being the signatory=s agent, like CSFB, may not claim the
trappings accompanying that designation, particularly when another=s constitutional right to a jury
trial is intertwined.

Before a
contractual jury waiver will be enforced, it must be shown to have been a
voluntary and knowing act Adone with sufficient awareness of the relevant circumstances
and likely consequences.@  Brady, 397 U.S. at 748, quoted in Prudential Ins.
Co., 148 S.W.3d at 132.  Where agency is undisputed, we may infer the
parties= intent that their jury waiver
include the acts of their agents and employees.  See Merrill Lynch, 235
S.W.3d at 189; Tracinda, 502 F.3d at 224, 225.  However, a plaintiff=s mere allegations of agency, by
themselves, do not raise such an inference. 








Because
Texas law does not presume that an agency relationship exists, the party
alleging agency has the burden to prove it.  See IRA Res., Inc. v. Griego,
221 S.W.3d 592, 597 (Tex. 2007).  An enforceable contract requires a Ameeting of the minds@ between both parties.  Advantage
Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 24 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
Absent proof of CSFB=s agency relationship with Mortgage Capital, we cannot assume
that the parties intended to include CSFB in their contractual jury waiver.

Therefore,
we hold that the trial court did not abuse its discretion by declining to
extend the jury waiver on the basis of allegations alone.  Because the right to
a jury trial implicates constitutional guarantees, we will not lightly infer or
extend a contractual jury waiver absent proof that the parties intended it to
include claims against nonsignatories.  See Credit Suisse, 257 S.W.3d at
490.

                                                                CONCLUSION

Accordingly,
we deny the petition for writ of mandamus.

 

/s/      Adele Hedges

Chief Justice

 

 

Petition Denied and Opinion filed,
December 11, 2008.

Panel consists of Chief Justice
Hedges, Justice Boyce, and Senior Justice Hudson.*









            [1]  Respondent is
the Honorable Elizabeth Ray, presiding judge of the 165th Judicial District
Court of Harris County.





            [2]  Developer also
sued relators for statutory fraud, civil conspiracy, negligent
misrepresentation, breach of contract, and promissory estoppel.  However, its common-law
fraud claim was the only legal theory that survived summary judgment and the
subsequent appeal.  See 1001 McKinney Ltd. v. Credit Suisse First Boston
Mortgage Capital, 192 S.W.3d 20, 24, 30 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).





            [3]  Developer
further argues that it has not sufficiently alleged an agency relationship because
it has not averred Mortgage Capital=s
right to control CSFB=s actions.  However, a petition can be sufficient if a
claim reasonably may be inferred from what is specifically stated.  See Bank
One, Tex., N.A. v. Stewart, 967 S.W.2d 419, 430 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).  Thus, a
petition is not necessarily defective even if the plaintiff has not
specifically alleged one of the elements of a claim.  See SmithKline Beecham
Corp. v. Doe, 903 S.W.2d 347, 354 (Tex. 1995).





            [4]  Tracinda
is not helpful on this point, either.  Therein the district court made a
factual finding that the nonsignatory acted as the signatory=s agent, and Tracinda did not challenge that finding
on appeal.  See Tracinda, 502 F.3d at 222.  We have no such factual
finding by the trial court.





            *Senior
Justice J. Harvey Hudson sitting by assignment.