Matter of Steyn v CRTV, LLC (2019 NY Slip Op 05341)





Matter of Steyn v CRTV, LLC


2019 NY Slip Op 05341


Decided on July 2, 2019


Appellate Division, First Department


Renwick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 2, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Judith J. Gische
Barbara R. Kapnick
Cynthia S. Kern,
Peter H. Moulton,JJ.


650887/18 

[*1]In re Mark Steyn, et al., Petitioners-Appellants-Respondents,
v
CRTV, LLC, Respondent-Respondent-Appellant.



Petitioners appeal from a judgment of the Supreme Court, New York County, (Eileen Bransten, J.), entered November 2, 2018, which, to the extent appealed from, vacated the arbitration awards of attorneys' fees to petitioners and entered a money judgment against respondent in favor of petitioner Oak Hill Media, Inc.




Ervin Cohen & Jessup LLP, Beverly Hills, CA (Michael D. Murphy of the bar of the State of California, admitted pro hac vice, of counsel), and Fishkin Lucks LLP, New York (Erin C. O'Leary of counsel), for appellants-respondents.
Browne George Ross LLP, New York (Jeffrey A. Mitchell and Judith R. Cohen of counsel), for respondent-appellant.



RENWICK, J.P.


This appeal stems from an article 75 proceeding seeking to confirm an arbitration award rendered in favor of petitioners, Mark Steyn, Mark Steyn Enterprises,[FN1] and Oak Hill Media [*2](OHM), and against respondent CRTV, LLC (CRTV). The arbitrator found that respondent CRTV breached the respective contracts it had entered with Steyn and OHM, and awarded petitioners breach of contract damages, as well as attorneys' fees. Supreme Court confirmed the breach of contract damages awards, but vacated the attorneys' fees award. On appeal, petitioners challenge the vacatur of the arbitrator's award of attorneys' fees, while respondent challenges only the breach of contract damages awards rendered in favor of petitioner OHM.[FN2]
The primary issues presented on this appeal are 1) whether the arbitrator manifestly disregarded the law when she awarded attorney's fees in favor of Steyn as the prevailing party;
and 2) whether the arbitrator exceeded her power by addressing OHM's counterclaims against CRTV when CRTV never agreed to arbitrate any dispute with OHM. For the reasons explained below, we reject CRTV's argument on the first issue, that the arbitrator manifestly disregarded the law when she awarded attorney's fees, but, we agree with CRTV on the second issue, regarding the threshold question of arbitrability, because CRTV objected, at the inception of the proceedings, to the arbitrator's jurisdiction over OHM's counterclaims.
Procedural and Factual Background
This appeal stems from a dispute between Mark Steyn, a renowned author and television and radio personality, and CRTV, an online television network, currently known as BlazeTV, which features conservative commentators such as Glenn Beck and Phil Robertson. In 2016, CRTV and Steyn entered into a "Binding Term Sheet" (Term Sheet) for the production and distribution of a television show to be produced in Vermont. In the Term Sheet, the parties promised to cooperate and work with each other, but their ultimate responsibilities were divided. CRTV retained control over business decisions for "hiring a production staff and building a set in Burlington, Vermont." Steyn was responsible for delivering 200 shows a year, each 48 minutes long. His responsibilities to deliver content were to begin as soon as the Burlington studio was "fully functioning."
The Term Sheet provides that the document "shall be governed by the laws of the United States and the State of New York, without reference to conflict of law principles." The Term Sheet further provides that the parties agree that any unresolved disputes "shall be settled exclusively by confidential binding agreement in accordance with the Federal Arbitration Act" and "[r]ules of the American Arbitration Association (AAA) applicable to general commercial disputes."
In a separate letter memorandum, an entity related to Mark Steyn, OHM, was retained to provide services to Steyn. Under the letter memorandum, which did not contain any arbitration clause requiring binding arbitration, OHM agreed to procure guests for the show, as well as hire third parties such as makeup artists and public relations firms. OHM principal Melissa Howe, who was also a business partner of Mark Steyn and his manager, executed the letter memorandum agreement.
In February 2017, CRTV abruptly cancelled the show after just two months on the air. [*3]The network claims cancellation was due to poor performance by its host. Mark Steyn, however, claims that he performed his obligations under the Term Sheet, but that "extraordinary personnel problems, construction delays, and technical shortcomings in the Steyn studio largely prevented content production." On February 20, 2017, CRTV served Steyn with a demand to arbitrate their dispute, alleging, among other things, breach of contract by Steyn. On March 14, 2017, CRTV filed an amended demand for arbitration that pleaded its claim with specificity. On March 22, 2017, Steyn and OHM served an answering statement and counterclaims. The counterclaims asserted various claims, including breach of contract, and sought breach of contract damages, as well as punitive damages and attorney's fees. CRTV answered Steyn's counterclaim, denying the allegations wholesale and seeking dismissal and "an award of attorneys' fees and costs." On August 18, 2017, Steyn filed a second amended answer and counterclaim, again seeking attorneys fees. On September 1, 2017, CRTV answered Steyn's second amended answer with counterclaims, again denying all material allegations, and demanding, inter alia, attorneys' fees.
Before the arbitration commenced, CRTV objected to the arbitrator's jurisdiction over OHM's counterclaim. On January 22, 2018, after the conclusion of the hearing and submission of posthearing briefs, the arbitrator issued an interim award, finding that CRTV failed to meet its contractual obligation to provide a fully functional studio, did not have the right to declare a breach, and was in breach of its obligations to Steyn and OHM. Conversely, the arbitrator found that petitioners Steyn and OHM had performed their obligations under the contract, and thus Steyn was entitled to $1.8 million in damages, and OHM was entitled to $908,124 in damages and unreimbursed expenses. Regarding attorneys' fees, the arbitrator observed that petitioners Steyn and OHM had requested fees in their counterclaim, CRTV had requested fees in its answer to the counterclaim, and Rule 47(d) of AAA provides for attorneys' fees where all parties request it, or where it is authorized by law or agreement. Nevertheless, the arbitrator declined to award attorneys' fees at the time of the interim award, requesting that the parties "set forth their claims and positions regarding an award of counsel fees. If counsel fees are to be considered, a fee affidavit shall be submitted and argument may be requested."
By post-interim award briefing, CRTV argued that attorneys' fees should not be awarded because it did not demand such fees in its initial or amended demand, prehearing briefs, or posthearing briefs, and thus there was no "unmistakably clear" intention to seek such fees. CRTV noted that while petitioners requested fees in their initial demand, they did not request them in their briefs or at the hearing. In response, petitioners argued that the Term Sheet, which provided that any disputes would be resolved by arbitration in accordance with AAA rules, thus incorporated AAA Rule 47(d) into the agreement, meaning that the parties agreed that attorneys' fees could be awarded.
In the final award, the arbitrator discussed the issue of jurisdiction over OHM, noting that the letter memorandum, unlike the Binding Term Sheet, did not have an arbitration provision. The arbitrator observed that CRTV had only raised the jurisdictional issue twice, in its answer to the counterclaim and in its posthearing reply brief. Substantively, CRTV participated in defending against OHM's claim, by submitting exhibits and offering testimony to rebut its damages. Ultimately, the arbitrator found that since CRTV did not seek a stay of arbitration as to OHM, and instead participated, it waived any jurisdictional objection. Therefore, the arbitrator awarded OHM $908,124 in contractual damages against CRTV.
Regarding attorneys' fees, the arbitrator found that both parties requested such relief in their pleadings. The arbitrator disagreed with CRTV's contention that the answers to the first and second counterclaims, as well as the AAA cover sheet, did not represent a request. Thus, after a reduction for overhead and other nonrecoverable costs, the arbitrator awarded petitioners Steyn and OHM $1,012,729 in attorneys' fees.
On February 28, 2018, Steyn and OHM commenced this article 75 special petition to [*4]confirm the awards that were granted in their favor and against CRTV. CRTV cross-moved to vacate the awards. Initially, Supreme Court affirmed all awards. With regard to attorneys fees, Supreme Court found, the case was similar to Matter of Warner Bros Records [PPX Enters.] (7 AD3d 330 [1st Dept 2014]), where the First Department found that the winning party in arbitration was entitled to attorneys fees where both parties had requested fees in their pleadings. However, upon reargument, Supreme Court reversed itself and vacated the award of attorneys' fees, relying upon the First Department decision in Matter of Matza v Oshman, Helfenstein & Matza (33 AD3d 493, 494 [1st Dept 2006]), which found that a boilerplate demand for attorneys fees was insufficient evidence of the parties intent to waive the American Rule [FN3] on attorneys' fees. Discussion
We first address the award of attorneys' fees. We are mindful that courts possess very limited authority to review an arbitration award (see Matter of Goldfinger v Lisker, 68 NY2d 225, 230-231 [1986]; see also Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247 [2005]). Indeed, the parties agree that manifest disregard of the law is the only appropriate ground to vacate the arbitrator's award of attorneys' fees (see generally Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471 [2006]).
For an award to be set aside for manifest disregard, the arbitrator must understand and correctly state the law, but proceed to disregard the same (McLaughlin, Piven, Vogel Sec., Inc. v Ferrucci, 67 AD3d 405, 406 [1st Dept 2009]). Application of the "manifest disregard of law" standard requires the court to make, in essence, three inquiries: (1) whether the legal principle allegedly ignored by the arbitrator was well defined, explicit, and clearly applicable; (2) whether the arbitrators knew of the governing legal principle; and, (3) whether knowing that principle, the arbitrators refused to apply it or ignored it (id.; see also Bear, Stearns & Co. v Ontario, Inc., 409 F3d 87 [2d Cir 2005]; Wallace v Buttar, 378 F3d 182 [2d Cir 2004]). A court may not vacate an arbitration award because it thinks the arbitrators made the wrong decision (Wallace, 378 F3d at 190). Indeed, even if the court thinks that the arbitrator reached the wrong result or applied the law incorrectly, the court should nevertheless confirm the award, "despite [the] court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached" (id. [internal quotation marks omitted]).
Whether manifest disregard of the law occurred here depends on whether New York law on attorneys' fees controlled the arbitration. It is well established under New York procedural rules and substantive law that arbitrators are not permitted to award attorneys' fees in arbitration (see e.g. CPLR 7513). New York courts only recognize three limited exceptions to New York's special arbitration provision barring the award of attorneys' fees: (1) where a statute provides for such an award, (2) where it was authorized by an express provision in the agreement; or (3) where it is "unmistakably clear" that both parties intended such an award (see Matter of Matza, 33 AD3d at 494-495; Emery Roth & Sons v M & B Oxford 41, 298 AD2d 320 [1st Dept 2002], lv denied 99 NY2d 509 [2003]).
In this case, Supreme Court found that the arbitrator was neither authorized to award attorneys' fees by statute (first exception), nor by the parties' agreement (second exception), but concluded that the third exception might apply. Supreme Court found, however, that it was not [*5]unmistakably clear that the parties intended that attorneys' fees be awarded. Specifically, relying on this Court's precedent (Matza, 33 AD3d at 493; Matter of Stewart Tabori & Chang [Stewart], 282 AD2d 385 [1st Dept 2006]), Supreme Court found that the parties' requests for attorneys' fees, in their respective pleadings, constituted mere "boilerplate requests" that did not satisfy an "unmistakably clear" intent to agree that attorneys' fees be awarded (Matza, 33 AD3d at 494-495).
We find, however, that the arbitrator did not manifestly disregard the law because it was not unreasonable for the arbitrator to conclude that the "unmistakably clear intent" requirement did not apply. It appears that the arbitrator believed the requirement did not apply because here the parties' arbitration clause incorporated the rules of the AAA as controlling, and Rule 47(d) of the AAA explicitly provides that an award of attorneys' fees may be made "if all parties have requested such an award or it is authorized by law or [the] arbitration agreement." Rule 47(d) of the AAA does not require any specific language to be used in making a request for attorneys' fees. Thus, under Rule 47(d) of the AAA, an arbitrator would be empowered to award attorneys' fees provided, as here, "all parties have requested . . . [it]" even if the "unmistakably clear" standard for requesting attorneys' fees under New York law was not met.
The arbitrator's conclusion under the AAA rules that a party may receive attorneys' fees, although not otherwise entitled to attorneys' fees under New York's "unmistakably clear" standard, was not unreasonable. Therefore, it cannot be overturned by this Court under the manifest disregard of the law standard. In fact, there is support for the arbitrator's conclusion in this Court's prior holdings. We have held that the power to award attorneys' fees can arise from the submission of the dispute under the rules of a given organization, like the AAA, if the rules themselves authorize the fees (Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d 392, 392-393 [1st Dept 2008] ["mutual demands for counsel fees in an arbitration proceeding constitute, in effect, an agreement to submit the issue to arbitration, with the resultant award being valid and enforceable"]; Emery Roth & Sons, 298 AD2d at 321 [noting that attorneys' fees could be awarded in arbitration if requested by the parties pursuant to the Commercial Arbitration Rules of the American Arbitration Association]). For example, in Matter of Warner Bros. Records [PPX Enters.] (7 AD3d at 330-331), this Court upheld the arbitrators' award of attorneys' fees because the arbitration in question was governed by the AAA, which permits an award of attorney fees and where, like here, both parties so requested it in their respective pleadings (id.).
Even if this Court were of the view that the AAA rules did not grant the arbitrator broader authority to award attorneys' fees than New York's "unmistakably clear" standard, that the arbitrator gave the AAA Rule 47(a) a broader interpretation does not evidence a manifest disregard of the law (see Wien & Malkin, 6 NY3d at 480). Indeed, this Court previously held in McLaughlin, Piven, Vogel Sec., Inc. v Ferrucci (67 AD3d at 405) that an arbitrator's award of attorneys' fees was not a manifest disregard of the law, even though the parties' agreement was governed by New York law, because it did not appear that the "arbitrators knew that New York law was controlling on the question of their authority to award attorneys' fees" (id. at 406). Similarly, here, just as Supreme Court initially held before changing its decision upon reargument, the arbitrator was under the impression that it is possible under the AAA rules for a party not otherwise entitled to attorneys' fees under New York's "unmistakably clear intent" standard, to be entitled to such fees under the AAA rules. This was a reasonable interpretation not based on manifest disregard of the law, and thus should not be vacated.
Finally, contrary to CRTV's argument, a New York choice of law provision in the agreement to arbitrate, without greater specificity, does not bar damages permitted under the FAA and AAA rules, but barred by New York law. For example, an arbitrator is empowered to award punitive damages, in accordance with FAA rules, despite the fact that a contract contains a [*6]New York choice of law provision and punitive damages would be precluded under New York law (Mastrobuono v Shearson Lehman Hutton, Inc., 514 US 52 [1995]; see also PaineWebber Inc. v Bybyk, 81 F3d 1193 [2d Cir 1996]). This Court has recognized that the FAA has a preemptive effect on New York's restrictions on arbitral awards of punitive damages and attorneys' fees (see Matter of Americorp Sec. v Sager, 239 AD2d 115 [1st Dept 1997], lv denied 90 NY2d 808 [1997]; Merrill Lynch, Pierce, Fenner & Smith v Adler, 234 AD2d 139 [1st Dept 1996]). Thus, although attorneys' fees are generally barred under New York law, pursuant to the "American Rule," they are not barred in arbitration when the agreement contains a New York choice of law provision.
We next examine whether the arbitration award against CRTV and in favor of OHM should be vacated. CRTV argues that the court erred in confirming the arbitrator's award as to OHM because there was no agreement to arbitrate between OHM and CRTV. OHM, however, argues that CRTV does not have the right to contest arbitrability, since it manifested its clear and unmistakable intent to subject itself to the arbitration process, waiving any objection thereto. We find OHM's argument unpersuasive and the award for OHM should be vacated.
Under established law, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise" (Howsam v Dean Witter Reynolds, Inc., 537 US 79, 83 [2002] [internal quotation marks omitted]); First Options of Chicago, Inc. v Kaplan, 514 US 938, 943 [1995] ["Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter"] [internal quotation marks omitted]; AT & T Tech., Inc. v Communications Workers of Am., 475 US 643, 649 [1986] ["Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"]).
Arbitration is a matter of contract, and a party cannot be forced to arbitrate a dispute that it did not expressly agree to submit to arbitration (AT & T Tech., Inc. v Communication Workers of America [Goldberg], 475 US at 648; Matter of Waldron [Goddess], 61 NY2d 181 [1984]). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so . . . . In this manner the law treats silence or ambiguity about the question who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' for in respect to this latter question the law reverses the presumption" (First Options of Chicago, Inc. v Kaplan, 514 US at 944-945; see also Howsam v Dean Witter Reynolds, Inc., 537 US at 83-84; Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 45-46 [1997]; Bell v Cendant Corp., 293 F3d 563, 566 [2d Cir 2002]). An arbitrator's decision to assert jurisdiction, over objection, is subject to a much broader and more rigorous judicial review than an arbitral decision on the merits, and because it is "a question for the court to decide," it is subject to de novo judicial review (Kaplan v First Options of Chicago, Inc., 19 F3d 1503, 1512 [3d Cir 1994], affd 514 US 938 [1995], quoting International Brotherhood of Teamsters, Chauffeurs, Warehouseman & Helpers of AM, Local 249 v Western PA. Motor Carriers Assn., 574 F2d 783, 787 [3d Cir 1978], cert denied 439 US 828 [1978]).
Here, it is uncontested that there was no agreement to arbitrate between OHM and CRTV. OHM was not even a named party in CRTV's original demand for arbitration; OHM's appearance was made on a counterclaim. CRTV did not sign a submission agreement with respect to OHM's counterclaim, and CRTV answered the counterclaim with an objection to jurisdiction. OHM's reliance on Matter of Arbitration between Halcot Navigation Ltd. [*7]Partnership v Stolt-Nielsen Transp. Group, BV (491 F Supp 2d 413, 417-419 [SD NY 2007]), is misplaced, since in that case, Halcot, the party denying arbitrability of its claim, requested that the arbitrator decide that objection as a "preliminary issue." After discovery and briefings, the three arbitrator panel decided against Halcot. Thus, the court found Halcot's attempt to vacate the arbitration on jurisdictional grounds to be a "second bite at the apple."
Here, however, as with the Kaplans in First Options, supra, no request was made for the arbitrator to decide arbitrability. Only after objecting did the arbitration proceed, and the Kaplans participate. The Third Circuit, whose reasoning was approved by the US Supreme Court, observed that a party does not have to try to enjoin or stay an arbitration proceeding in order to preserve its objection to jurisdiction, and that a jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal waiver (Kaplan, 19 F3d at 1510). That the Kaplans participated in the arbitration did not waive their objection (id. at 1512).
Cases cited by OHM dealing with whether parties disagreed on the scope of arbitration are not comparable to this matter, where the issue is whether a party had the right to arbitrate at all (see e.g. T.Co Metals, LLC v Dempsey Pipe & Supply, Inc., 592 F3d 329 [2d Cir 2010]). Indeed, the court in T.Co Metals noted that its decision was based, in part, on the fact that the arbitrator was empowered by a broadly worded arbitration agreement between the parties.
OHM's argument that the Term Sheet, which incorporated AAA Rules, thus left the issue of arbitrability to the arbitrator, is also unpersuasive. OHM was not a party to the Term Sheet, and is thus not entitled to invoke it (compare Lapina v Men Women N.Y. Model Mgt., Inc., 86 F Supp 3d 277 [SD NY 2015]). OHM has not shown that a "sufficient relationship" existed between it and CRTV such that CRTV is obligated to arbitrate claims with OHM (compare Contec Corp. v Remote Sol., Co., 398 F3d 205 [2d Cir 2005] [arbitration appropriate for nonsignatory where parties conducted themselves as subject to the agreement at issue regardless of change in corporate form]).
Nor were the issues between OHM and CRTV so intertwined with those between CRTV and Steyn, such that CRTV would be estopped from avoiding arbitration (compare Choctaw Generation Ltd. Partnership v American Home Assur. Co., 271 F3d 403, 404-405 [2d Cir 2001] [where owner signed arbitration agreement with general contractor containing an arbitration provision, owner was estopped from avoiding arbitration of the related claims of the surety bondholder, with which it also had an agreement]; Astra Oil Co., Inc. v Rover Nav., Ltd., 344 F3d 276 [2d Cir 2003] [where both Astra and its affiliate AOT brought claims against Rover arising from delay in cargo shipment, Rover was estopped from refusing to arbitrate Astra's claims under an arbitration clause in a contract between Rover and AOT]). Here, the services under the OHM letter agreement arose, but differed, from the work created by the Term Sheet. The Term Sheet did not depend upon the viability of the OHM letter agreement in any way; a different company could have been easily hired as a guest booker.
We have considered the parties' remaining contentions and find them unavailing.
Accordingly, the judgment of the Supreme Court, New York County, (Eileen Bransten, J.), entered November 2, 2018, which, to the extent appealed from, vacated the arbitration awards of attorneys' fees to petitioners and entered a money judgment against respondent in favor of petitioner Oak Hill Media, Inc. should be reversed, on the law and the facts, without costs, the money judgment award in favor of OHM vacated, and the arbitration awards of attorneys' fees to Steyn reinstated. The appeals from the orders, same court and Justice, entered July 16, 2018 and
July 23, 2018, should be dismissed, without costs, as subsumed in the appeal from the judgment.
All concur.
Judgment, Supreme Court, New York County, (Eileen Bransten, J.), entered November 2, 2018, reversed, on the law and the facts, without costs, the money judgment award in favor of OHM vacated, and the arbitration awards of attorneys' fees to Steyn reinstated. Appeals from [*8]orders, same court and Justice, entered July 16, 2018 and July 23, 2018, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Renwick, J.P. All concur.
Renwick, J.P., Gische, Kapnick, Kern, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 2, 2019
CLERK



Footnotes

Footnote 1: Petitioners Mark Steyn and Mark Steyn Enterprises together will be referred to as Steyn.

Footnote 2: CRTV also asserts that Supreme Court failed to dismiss the claim against nonparty Cary Katz. Although Steyn asserted a counterclaim against Cary Katz, the arbitrator found that Steyn failed to pursue the claim in arbitration and deemed it abandoned. In any event, Cary Katz was never added to the article 75 proceedings, nor did he seek to intervene. Moreover, CRTV lacks standing to demand relief on Katz's behalf (see Society of Plastics Indus., Inc. v County of Suffolk, 77 NY2d 761, 772 [1991]).

Footnote 3: The American Rule rule on attorney fees requires each party to pay its attorney, win or lose; the English rule (applicable in most of the world) requires the losing party to pay the winner's reasonable attorney fees. New York law follows the American rule.